406    APPELLATE COURTS OF ILLINOIS.

VOL. 102.] Sibley Warehouse & Storage Co. v. Durand & Kasper Co.

---

## Sibley Warehouse & Storage Co. v. Durand & Kasper Co.

1.  WITNESSES—*May Refresh Their Memory from Memoranda.*—A witness may refresh his memory from a memorandum of a transaction made by him the day after such transaction, if made while he is completing such transaction, or so directly thereafter as to be a part of the same.

2.  HARMLESS ERROR—*Not Sufficient Cause for Reversal.*—Where an error works no injury to an appellant, it can not be regarded as reversible error.

3.  ADMISSIONS—*By an Employe, When Not Binding upon his Employer.*—It is not within the ordinary duties of a teamster to make binding admissions as to the condition of the contents of a package of goods received by him for his employer.

4.  VERDICTS—*When to be Set Aside.*—When a verdict does not sat-

isfy the conscience of the trial judge, the party against whom it has been rendered is entitled to a new trial.

5. WAREHOUSEMEN—*To Exercise Reasonable Care to Preserve Goods Placed in Their Keeping.*—A warehouseman is bound to exercise reasonable care to preserve the goods placed in his charge, from being injured by contact with, or from being placed in the vicinity of other property.

**Trespass on the Case,** on promises for damage to goods in a warehouse. Appeal from the Circuit Court of Cook County; the Hon. ALONZO K. VICKERS, Judge presiding. Heard in this court at the October term, 1901. Affirmed. Opinion filed June 23, 1902.

**Statement.**—Durand & Kasper Company, the plaintiff below, purchased several carloads of flour, which were delivered at the Illinois Central freight depot, in Chicago, during the month of April, 1899. Upon its arrival at the railroad freight depot, the flour was inspected there by the sub-inspectors of Mr. Rathborne, flour inspector of the Board of Trade. They testified that it was in good condition at that time. The flour remained in the Illinois Central freight depot, surrounded by various kinds of freight and merchandise, some of which possessed strong and penetrating odors, until June 7, 1899, when, without having been again inspected, while in the railroad freight depot, it was reloaded in cars and shipped to the warehouse of the Sibley Warehouse and Storage Company. After being taken to the Sibley warehouse, the flour was not inspected until the last of October, 1899—a period of nearly six months. When asked for instructions as to the storage of this flour, the Durand & Kasper Company directed that it be stored in the upper floors of the warehouse where it would be protected from moisture and dampness. It was stored in the upper floors in a dry place, in accordance with the instructions of the plaintiff, and remained there until October 30, 1899, when 100 sacks were delivered to the Durand & Kasper Company and taken to their bakery. One of the plaintiff's witnesses testified that when the flour was received at the bakery it had a burning, unpleasant taste and odor which, in his opinion, unfitted it for use for food. The rest of the flour

408 APPELLATE COURTS OF ILLINOIS.

VOL. 102.] Sibley Warehouse & Storage Co. v. Durand & Kasper Co.

remaining in the warehouse, was later inspected, and there was testimony that it also had an unpleasant odor and taste, and that this odor was quite noticeable in that part of the warehouse where the flour was stored. The flour was finally sold for $2 per barrel, which the plaintiff's witnesses testified was the highest price that could be obtained for it in its then condition. Flour of the same quality in good condition, it was testified, was worth about $4.50 per barrel at this time.

In the warehouse receipt upon which, as a contract, this suit was brought by the plaintiff, it was expressly provided that the warehouse company should be exempt from claims for any loss or damage "from the inherent qualities of the property" stored, or by riot, fire, water, ratage, leakage, etc., or "from being perishable."

Durand & Kasper Company brought suit in assumpsit on the storage contract against the Sibley Warehouse and Storage Company, and a verdict was rendered in favor of the plaintiff, assessing the damages at $2,135.47. Judgment was entered upon this verdict, and from this judgment the Sibley Warehouse and Storage Company prayed this appeal.

HARLAN & BATES, attorneys for appellant.

SMITH, HELMER, MOULTON & PRICE, attorneys for appellee.

MR. JUSTICE BALL delivered the opinion of the court.

Rathborne, the official flour inspector of the Chicago Board of Trade, with Hewitt and Young, on October 31, 1899, went to the warehouse of appellant and there inspected the flour in controversy. As Rathborne took his samples, placing each in a small paper bag, he called out to Young the car lot numbers from which the samples were taken. As each bag was passed to him the latter marked upon it the number announced by Rathborne. These samples they carried to Rathborne's office, where they completed the inspection, and made up a complete memorandum, into which were copied the car numbers from the original

sample bags. At the trial neither Rathborne nor Young remembered these car numbers, and they were permitted severally to refer to this complete memorandum for the same. Appellant assigns this as error. Although this memorandum was made the day after they had seen the flour in the warehouse and had there marked the car numbers upon the paper bags, it seems it was made while they were completing their inspection of this flour, or so directly thereafter as to be a part of the transaction. If so, then it was proper for the witnesses to use the same when necessary for the purpose of refreshing their memories. Green leaf on Ev., Secs. 436-437.

But waiving that view, the only use of this evidence was to identify the flour in question. The identity of the flour was never a matter of dispute. Hence the error, if it be one, was not damaging to appellant, and is not reversible error.

October 30, 1899, appellee sent its teamster to the warehouse of appellant with orders for the delivery of one hundred sacks of this flour. When it was delivered to him he gave receipts on the back of said orders for the same, in which are the words, "Received in good condition the articles named in this order." These receipts appellant offered in evidence "for every purpose for which they were competent in the case." The court ruled that they were competent to prove the receipt of the goods, but not competent evidence as tending to prove the then condition of the flour; and, as appellee admitted having received the flour, he refused to let them go into evidence. This action of the court is alleged as error.

These receipts did not purport to be signed by appellee. They were signed by its teamster only. It is not within the ordinary duties of a teamster to make binding admissions as to the condition of the contents of a package he receives for his employer. That this teamster was authorized by appellee to make such admissions is not shown in the record. The action of the learned trial judge in this regard is sustained.

410    APPELLATE COURTS OF ILLINOIS.

VOL. 102.] Sibley Warehouse & Storage Co. v. Durand & Kasper Co.

We find no substantial objection to the instruction given by the court, at the request of appellee, reading as follows:

"The jury are instructed that the phrase, 'inherent qualities' as used in the warehouse receipt offered in evidence, means and refers to natural qualities or characteristics pertaining to the flour named in the receipt, which would cause loss or damage if the flour were uninfluenced by matter outside of itself, or by conditions in which the flour might be placed. And if you believe from the evidence in this case that the flour of the plaintiff was damaged in the warehouse of the defendant, and if you further believe that such damage was caused by a smell and taste being communicated to the flour from something outside of the flour, then the defendant is not exempted from liability by reason of the use in the contract of the phrase 'inherent qualities' above mentioned."

The warehouse receipt referred to in the above instruction as "the contract" contained the following stipulation:

"Loss or damage by riot, or insurrection, fire, water, ratage, moths, leakage, shrinkage, frost or change of weather, or from the inherent qualities of the property, or from being perishable at owner's risk."

"Inherent qualities of the property" means something within, and not something without the property. If the property was destroyed or damaged from within or from qualities inherent in it, the warehouseman is exempt. If such destruction or damage comes from without, and through lack of reasonable care on the part of the warehouse company, without fault upon the part of the owner of the property, the former is liable. The sensitiveness of flour to outside influences does not bring it within the language or the spirit of the stipulation. The instruction correctly interprets the quoted clause of the warehouse receipt.

Instruction No. 1 given for appellant is exceedingly favorable to it, and fully covers the law so far as it is contained in the first two instructions asked for by the defendant and marked as refused by the court.

We find no reversible error in the remaining instructions tendered by appellant and refused by the court. Taken as

a whole the instructions given to the jury, state the law governing this case.

A careful reading of the record convinces us that this verdict and judgment are not contrary to the evidence. It is true that after the flour was received in Chicago and inspected as in good order, it lay in the Illinois Central freight house, near oils, coffee, dried fruits and other merchandise with strong odors, for about seven weeks before it was placed in appellant's warehouse, and that it was not re-inspected at or about the time of its removal. But that freight house was open daily and kept clean. The taint of the flour in October, 1899, and thereafter, was a chemical taint or smell similar to that of carbolic acid, which was not the smell of oils, coffees, dried fruits or merchandise, but was a taint and smell identical with that which filled that part of the warehouse where appellant had stored this flour. When taken from the warehouse the flour had a burning, smarting taste which ruined it for baking purposes. The presence of certain drums and carboys, apparently containing chemicals, in the vicinity of this flour, is not disputed. We think that the weight of the evidence is that this flour was spoiled in the warehouse, and not in the freight house. But if we were in doubt as to the weight of the evidence, and felt that we would have approved a finding for the appellant upon this question, we can not say that the verdict is manifestly against the evidence. It requires a case which appeals strongly to the sense of justice of a reviewing court before it will disregard the opinion of twelve men on matters of fact, which it was their peculiar province to decide. Again, before judgment is rendered against a defendant in a damage case, he has a right to the judicial determination of the trial judge as to his liability. If the verdict does not satisfy the conscience of that judge, the defendant is entitled to a new trial. In this case the jury saw and heard the witnesses, and the trial judge, with the same opportunities, refused a new trial. Under all the circumstances we can not interfere with this verdict and judgment upon the ground that they are not sustained by the evidence.

It is said that when the contracting agent of the appellant solicited this storage from the appellee, he asked the agent of the appellee if he desired the flour put in any particular part of the warehouse, and the latter said he was not particular so long as it was put on the upper floors where it would be free from moisture and dampness. It is claimed that this reply was insufficient; that appellee's agent should have gone on to tell this soliciting agent that flour was sensitive to strong odors, and should not be stood near chemicals; and also that this reply was an instruction or suggestion as to the manner of storing the flour, which appellant strictly followed, and is therefore not liable for the ensuing damage. Neither of these positions is well taken. This reply does not appear to be an instruction or suggestion · except as to moisture and dampness. Appellant is a warehouse company. It must be presumed to know its business and is bound to exercise reasonable care to preserve the goods placed in its charge from being injured by contact with or the vicinity of other property.

The judgment of the Circuit Court will be affirmed.