Bogdanka Lukich, Plaintiff-Respondent, v. Pete J. Angeli and Arthur J. Ward d/b/a Bellwood Cab Company, Edward F. Spevak, Jr., and Charles F. Davis, Defendants.
On Separate Petitions for Leave to Appeal Filed by Edward F. Spevak, Jr., and by Pete J. Angeli.

Gen. No. 48,017 and 48,018.

First District, First Division.

June 26, 1961.

Vogel & Vogel, for petitioner Edward F. Spevak, Jr., and Tischer & Narusis and Gerald M. Chapman, all of Chicago, for petitioner Pete J. Angeli.

Michael A. Gerrard, David B. Trott and Allen S. Gerrard, of Chicago (Allen S. Gerrard, of counsel), for plaintiff-respondent.

MR. JUSTICE BURMAN delivered the opinion of the court.

Plaintiff, Bogdanka Lukich, was injured when a cab owned by defendant Pete J. Angeli, in which she was a passenger, was struck by a car driven by defendant Edward F. Spevak, which was in turn struck by a car driven by defendant Charles F. Davis. Plaintiff sued the three defendants for $35,000. The court directed a verdict for Davis at the close of plaintiff's evidence,

and this ruling is not contested here. The jury returned a verdict against Angeli, assessing plaintiff's damages at $5,000 and found Spevak not guilty. Judgment was entered on the verdict. Upon plaintiff's motion, a new trial was granted as to both Angeli and Spevak. They filed separate petitions for leave to appeal which this court granted under Ill Rev Stat Ch 110, § 77(2) (1959). On motion of plaintiff the two appeals were consolidated. No point is raised with respect to the pleadings.

The occurrence happened shortly before 8:00 a. m., on the morning of May 23, 1952, in Bellwood, Illinois, on Washington Boulevard, between 27th Avenue and 28th Avenue. Plaintiff, an employee of Borg-Warner Company, was riding to work in one of Angeli's cabs driven by James V. Dixon. She testified that she told the driver to take her to the alley entrance of Borg-Warner Company. She didn't pay any attention to how the cab was being driven, and while looking for money in her pocketbook to pay the fare she "felt a terrible crash." She was thrown from the seat, "twisting her spine" and hitting her head against the frame of the cab, and felt pain in her head and left knee.

All the cars involved were going east on Washington Boulevard, which was a paved four-lane road. All the witnesses agreed that traffic was heavy. Plaintiff testified that it was drizzling and the streets were somewhat wet, while other witnesses said it was a clear day, though it had rained the night before leaving the streets with small puddles of water.

Spevak testified he was driving in the outside lane and as he neared 27th Avenue he saw the cab on the inside lane to his left about twenty-five feet ahead of him. He saw the tail lights of the cab go on and off and without any signal the cab made a "sudden turn" into his lane at an angle toward the side street. He said the cab made a "very hard stop" and before he came in contact with the cab "I hit my brakes as fast

23

as I could." Davis, who was driving his car following Spevak, saw the cab, which he placed about fifty feet in front of Spevak, pull into Spevak's lane. "It appeared to me a rather quick move." Davis said he hit Spevak's car after Spevak hit the cab.

Dixon, the cab driver, testified he was driving on the inside lane of Washington Boulevard because he was under the assumption that plaintiff wanted to go to the Chicago Screw Company, which was two blocks beyond the Borg-Warner Plant. He said the plaintiff directed him to go to Borg-Warner when he was less than two blocks away from that plant and it was then he decided to pull into the outer lane. Q. "Is it my understanding it was at that point you determined to pull into the lane next to you, on the right? A. That is when I got the first idea and I knew I had a problem to get myself over in the right lane." He said he "looked back" and "saw room to move in;" he turned to his right and gave a signal with his left hand and also "hit" his foot brakes because his directional signal wasn't working. He testified he travelled about 40 feet in the outer lane when plaintiff told him he passed the entrance of Borg-Warner so he had no alternative but to turn into another factory entrance because she wanted to get out and walk back the short distance to her destination. He said he pulled off onto the shoulder of the road at an angle to his right and stopped suddenly to avoid hitting pedestrians walking to the factory, and the next thing he knew the car behind him struck his cab. Plaintiff denied she told Dixon he passed the Borg-Warner entrance and that she wanted to get out. She said when she got in the cab she told the driver she was going to Borg-Warner and they had no other conversation.

Plaintiff's written motion for new trial consisted of eleven paragraphs, as follows:

24

1. The verdict of the jury is contrary to law.

2. The verdict of the jury is contrary to the manifest weight of the evidence.

3. The verdict of the jury is contrary to the law and the evidence.

4. The damages awarded the plaintiff by the jury are grossly inadequate in that the verdict of $5,000.00 is less than the expenses incurred by the plaintiff resulting from the injury.

5. The verdict of the jury in the sum of $5,000.00 is so inadequate that it resulted from prejudice and bias.

6. The court erred in admitting over the objection of the plaintiff incompetent evidence offered on behalf of the defendants.

7. The court erred in sustaining objections to proper and competent evidence offered on behalf of the plaintiff.

8. The argument of counsel for the defendant that to return a large sum of money to the plaintiff is the reason for the present high cost of living was so prejudicial as to prejudice the jury against this plaintiff.

9. The court erred in permitting improper arguments to the jury by defendant's counsel.

10. The court erred in giving the following instructions to the jury, submitted by defendant:

### Defendants' Instruction No. 3.

"If you find from the greater weight of the evidence, and under the instructions of the Court, that the plaintiff is entitled to recover, then you must consider the question of damages, if any. If you find from the evidence, and under the instructions of the Court, that the plaintiff is not entitled to recover, then you must not consider

25

the question of damages. The fact that the Court gives any instructions on the question of damages, or that counsel has discussed such subject, is not to be taken by you as any intimation by the Court, or any admission by counsel for the defendant, that the defendant is liable."

Defendants' Instruction No. 4.

"In arriving at your verdict you must not make a compromise between the question of liability and the amount of the damages, if any."

11. The court erred in marking "Refused" the following instructions tendered on behalf of the plaintiff:

Plaintiff's Instruction No. 3.

"You are instructed that, under the evidence in this case, and the law as given to you in these instructions, it is your duty to find by your verdict which of the defendants is guilty of negligence as defined in these instructions, or if both defendants are guilty of such negligence. You may not render a verdict finding that neither or both of the defendants are guilty."

Plaintiff's Instruction No. 8.

"The statute of the State of Illinois provides substantially, in part, that no person shall drive a vehicle upon any public highway in this State at a speed greater than is reasonable and proper, having regard to the traffic and use of the way, or so to endanger the life or limb or injure the property of any person."

■ It appears from the record that the only point argued by plaintiff's attorney during the hearing on the new trial motion was the adequacy of the damages. Plaintiff's counsel stated this was the principal basis

26

of his motion and limited his discussion to the medical testimony and the items of damages, particularly plaintiff's loss of wages. Angeli's attorney answered him on this point, and the trial judge then announced he would grant a new trial against both defendants, giving no reasons. To properly aid this court to determine the merits of an appeal from an order granting a new trial, particularly when there are two opposite verdicts, one of guilty and one of not guilty, the trial judge should state his reasons for his action. Hall v. Chicago & N. W. Ry. Co., 349 Ill App 175; Rowoldt for Use of Flannigan v. Cook County Farmers Mut. Ins. Co., 305 Ill App 93, 26 NE2d 309; Couch v. Southern Ry. Co., 294 Ill App 490, 14 NE2d 266; Gavin v. Keter, 278 Ill App 308.

We will first consider whether the trial court properly granted the motion for new trial against Spevak on the weight of the evidence. On a motion for a new trial, the trial court may weigh the evidence and must grant the new trial if the verdict is contrary to the weight of the evidence. Hunt v. Vermilion County Children's Home, 381 Ill 29, 44 NE2d 609. In passing on a motion for a new trial the trial judge has a greater latitude in passing on question of fact than on questions of law, and we will not reverse its ruling on a question of fact unless a clear abuse of discretion is shown. Hulke v. International Mfg. Co., 14 Ill App2d 5, 142 NE2d 717. However, this discretion is not unlimited and must be reasonably exercised, and the trial court cannot interfere with the jury's verdict unless it can say that it is contrary to the preponderance or weight of the evidence, though he might have decided differently himself. Jonkman v. Singletary, 10 Ill App2d 335, 134 NE2d 671.

We hold that the trial court abused its discretion in granting a new trial in regard to Spevak. The jurors heard the testimony of Spevak and Davis to

27

the effect that the cab left its lane and suddenly cut in front of Spevak; while the cab driver's testimony contradicts them he did admit changing lanes after making a sudden decision to do so. It is the jury's function to weigh conflicting inferences. Stilfield v. Iowa-Illinois Gas & Elec. Co., 25 Ill App2d 478, 167 NE2d 295. In our opinion there was a substantial basis for the verdict and it was not contrary to the weight of the evidence.

 Points 4 and 5 in the written motion for new trial are directed to the inadequacy of the verdict, which is not relevant to Spevak's appeal. Points 6, 7 and 9 raise general objections to the admission of incompetent evidence offered by defendants, the refusal of proper evidence offered by plaintiff, and improper argument of defense counsel. Since these latter errors are not particularly specified, we need not consider them here. Perez v. Baltimore & O. R. Co., 24 Ill App2d 204, 164 NE2d 209. Point 8 had no effect on the verdict in question and the statement objected to was made by Angeli's counsel. We have considered the jury instructions given and refused raised in points 10 and 11 and are of the opinion that the jury was, on the whole, properly instructed as to the law in the case. Defendant's instructions 3 and 4 did not affect the verdict in question. Plaintiff's instruction No. 3 was properly refused because it contained a double negative and was confusing. Plaintiff's instruction No. 8 was inapplicable since there was no charge of excessive speed.

 The order granting plaintiff a new trial against Angeli presents a different question. The main issue here is whether the damages awarded plaintiff were insufficient, warranting a new trial. If a trial court finds that the damages awarded are against the manifest weight of the evidence, it is its

28

duty and right to grant a new trial. Hong v. Williams, 6 Ill App2d 456, 128 NE2d 655.

At the time of the accident plaintiff was five months pregnant. After the accident plaintiff said she was not hurt and asked to be taken home. Some two and a half hours later she called Dr. Paul, who had been attending her during pregnancy, and he made a house call. She afterwards complained of pain in her head, knee, and the lumbar portion of her back. The pains became more acute, and Dr. Paul advised her to see an orthopedic surgeon. Plaintiff had her baby in September, 1952, and later that fall she consulted Dr. Seffer, a specialist in internal medicine. He diagnosed her condition as an injury to the coccyx. He found plaintiff had hay fever, was overweight, and had a limitation of motion of the lumbar spine together with a tenderness on pressure over the lumbar spine, sacroiliac, and coccyx or tail-bone. During the month of February, 1953, plaintiff returned to work for about ten days but complained she was unable to stand or "be seated" for a couple of hours at a time. She saw Dr. Seffer again and he then diagnosed her condition as involving an ailment in the lumbar spine and recommended that she wear a support on the lumbo-sacral area of the spine. In May, 1953, plaintiff was in a hospital for examination, and that after a clinical diagnosis, Dr. Seffer testified, he suspected a herniation of the disc. Plaintiff continued the treatment prescribed by Dr. Seffer without improving and was unable to do her housework. In June, 1953, plaintiff again became pregnant and had a normal delivery. In 1954 she was hospitalized for surgery on an umbilical hernia and in 1955 she had an operation for hemorrhoids resulting from childbirth. She continued to undergo considerable pain and complained of low back pains and various other complaints. She con-

tinued to see Dr. Seffer until she saw Dr. Michaels, an orthopedic surgeon, in November, 1956, who recommended surgery. In March, 1957, Dr. Michaels performed an operation on plaintiff for a ruptured disc, which has been largely successful. While defendants have elicited a good deal of testimony from these doctors as to other factors which could cause or complicate plaintiff's disc condition, they also state that the accident could be a result of the 1952 accident.

Plaintiff's medical expenses were $1,861.61. She lost wages of $336.00 up to her seventh month of pregnancy, based on her net earnings of $42 a week. In addition, plaintiff calculated her wages lost due to her back condition for a five year period to be $5,000 with allowance made for her second pregnancy and the two unconnected operations.

We think there is substantial support in the record for plaintiff's claim that the damages awarded her in the sum of $5,000 were inadequate. We find this is a proper area for the trial court's discretion. There is evidence that plaintiff enjoyed good health before the accident. From the date of the accident plaintiff constantly complained of pain in her lower back and five years later she had a herniated introvertebral disc which was exorcised. In this issue the objection to the remarks of Angeli's counsel in his final argument to the jury in point 8 of plaintiff's petition is well taken. Counsel told the jury, "I feel that it is unfortunately the type of thing that places a burden upon us all. It is the type of thing that causes the increase in the high cost of living." Angeli's counsel argues the fair leeway rule and cites cases. We do not consider these remarks within that rule and we think it's effect was to prejudice the jury. We hold that it was within the trial court's power to grant plaintiff a new trial against Angeli because of the inadequacy of the damages. See Kinsell v. Haw-

thorne, 27 Ill App2d 314, 169 NE2d 678; Hong v. Williams, 6 Ill App2d 456, 128 NE2d 655.

For the reasons stated above, the order of the trial court granting plaintiff a new trial is reversed as to defendant Spevak and affirmed as to defendant Angeli.

Reversed in part and affirmed in part.

KILEY, P. J. and MURPHY, J., concur.