**Billie J. Battershell, Plaintiff-Appellant, v. Bowman Dairy Company, a Corporation, Defendant-Appellee.**

### Gen. No. 48,411.

First District, Third Division.

December 13, 1961.

Rehearing denied October 24, 1962.

Henry Mitgang, of Chicago (Herzl E. Levine and Samuel L. Evins, of counsel), for appellant.

Ralph A. Gabric and Herbert P. Veldenz, of Chicago (Ralph A. Gabric, Herbert P. Veldenz and Vera E. Cuthbert, of counsel), for appellee.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

Plaintiff appeals from a judgment on a verdict of not guilty in a personal injury suit arising out of a collision between an ambulance driven by plaintiff and a truck belonging to defendant. The accident occurred at the intersection of Lawrence and Western Avenues in Chicago on the night of February 17, 1959. Plaintiff, an employee of an ambulance service, was driving an ambulance west on Lawrence Avenue toward a hospital to which he was transporting a sick woman and two other passengers. A police officer on a motorcycle preceded the ambulance, clearing the way of traffic. Defendant's truck, a tractor with a trailer attached, was proceeding north on Western Avenue. The vehicles collided at a point just within the northeast quadrant of the intersection. The truck came to rest in the intersection and the ambulance came to rest on Western Avenue just north of the intersection. Weather conditions were fair and visibility was good. The ambulance was equipped with rotating lights on its roof and on its right front fender and with a siren.

There are two sharp issues of fact—one on who had the green light and the other on the speed of the respective vehicles. Each side is supported by witnesses other than the driver. A bystander testified that the truck ran the light after it had changed from green to red. Another bystander testified that *the truck had the light*. A witness named Coleman who was in an automobile southbound on Western Avenue testified that the truck had the light and that it had slowed down to 10 miles an hour. There is a question raised by plaintiff as to the propriety of this witness's testi-

196

mony, which we will later consider. The two passengers in the ambulance, who have also sued defendant, testified in support of plaintiff.

The police officer who escorted the ambulance testified that when he first saw the truck it was 50 to 75 feet from the intersection and appeared to be stopping. After having signaled for traffic to stop, he proceeded west and then heard the crash. He returned to the intersection and interviewed the driver of the truck, who told him that he was going 15 miles an hour, did not see or hear the ambulance, did not stop, as the light was green for him, and that as he understood it he was not required by law to yield the right of way to a flashing signal. The driver denied most of this and testified that he always stopped for ambulances as a courtesy even when they were empty.

■ While the number of witnesses whose testimony favors plaintiff exceeds those for defendant on these points, this is not sufficient to warrant a finding by this court that the verdict is against the manifest weight of the evidence. It was still a question for the jury.

Plaintiff contends, however, that the driver of the truck is by his own testimony convicted of negligence and that a verdict should have been directed for plaintiff. The basis for this is the admission by the truck driver that he did not know what had happened until after the impact and that he did not see the ambulance (which he contends was due to the fact that a building at the southeast corner obstructed his view) or its flashing lights or hear the siren. This, plaintiff contends, establishes as a matter of law that the driver of the truck negligently failed to give the ambulance the right of way.

■ The law is clear that on a motion to direct a verdict the court may not consider any conflicts in the evidence or its weight or preponderance or the credi-

197

bility of witnesses, but may consider only that evidence which is most favorable to the party against whom such a motion is directed, together with all reasonable inferences that may be drawn therefrom. Hering v. Hilton, 12 Ill2d 559, 563, 147 NE2d 311, 314; Schneiderman v. Interstate Transit Lines, Inc., 394 Ill 569, 583, 69 NE2d 293, 300; Busser v. Noble, 22 Ill App2d 433, 440–42, 161 NE2d 150, 153–54; Foster v. Bilbruck, 20 Ill App2d 173, 179–81, 155 NE2d 366, 370–71. We must therefore accept the truck driver's testimony that he could not see the ambulance, that a building at the corner obstructed his view, that the light was with him, that he entered the intersection at a reasonable rate of speed, that when he was alerted to the danger by the policeman, he was only 30 feet from the intersection sidewalk, and that he then concentrated on stopping the truck by applying the regular brake and pulling the emergency. It must be borne in mind that all this happened in a few seconds.

 The law of Illinois gives an emergency vehicle such as the one driven by plaintiff the right of way as against other vehicles, but provides that this shall not relieve the driver of the duty to drive with due care for the safety of all persons using the highway. Ill Rev Stats, c 95½, § 169, 1959. The law applies to an intersection controlled by traffic lights and thus permits the driver of an emergency vehicle to go through a red light. Ill Rev Stats, c 95½, § 120, 1959; Perrine v. Charles T. Bisch & Son, 346 Ill App 321, 105 NE2d 543 (1952). A perilous situation is thereby created, since drivers of automobiles cannot be expected to approach crossings at all times with the tense and alert expectation that an emergency vehicle may approach and go through a stoplight or stop sign. A report released by the National Safety Congress recommends that ambulance travel on city streets and highways should be regulated by the same laws, rules and regulations which govern other traffic, and states:

198

"For practical purposes, speed is seldom, if ever, a factor in the preservation of a life. The excessive speed of ambulances has been shown to result in more traffic deaths than lives saved." The Myth of the Speeding Ambulance, Traffic Safety, a National Safety Council Publication, January 1960, p 43.

Without accepting this literally as a matter which may be legally admissible on trial, we refer to it as pointing up what is essentially a perilous situation. The due care required of plaintiff was that commensurate with the circumstances surrounding his entering the intersection; in other words, that care required of one who has undertaken a perilous task. The evidence does not sustain plaintiff's contention that a verdict should have been directed or that the finding of the jury is against the manifest weight of the evidence. It is a close case, however, and it is important that the trial should be substantially free of error. We will now consider the errors charged.

██ The most serious charge relates to the failure of defendant to answer fully an interrogatory filed by plaintiff which reads as follows:

"Q. What is the identity and location of all persons known to defendants, their attorney or other agents who have knowledge of relevant facts relating to the occurrence complained of in the complaint filed in this cause?"

Defendant's answer filed November 18, 1959 listed various persons including the following: "Mr. and Mrs. Coleman, address unknown." In a city like Chicago such an answer with respect to a witness otherwise unrelated to the case is the equivalent of no answer at all. There are hundreds of Colemans living in the city, as the telephone directory reveals. Upon the trial of the case, defendant produced Benjamin

Coleman who, as we have hereinbefore stated, testified that when the ambulance entered the intersection of Lawrence and Western Avenues the light was red. When Coleman was first called, plaintiff objected to his testifying on the ground that he (plaintiff) had never been apprised of the location or address of Mr. and Mrs. Coleman. The court allowed plaintiff's counsel to question the witness as to when he was first contacted by defendant. The witness said it was in February 1959, the same month in which the accident occurred; that his sister-in-law was employed by defendant and that within three days after the accident, he had told her about it; and that in February 1959 or shortly thereafter he was contacted by Bowman Dairy Co. There is some confusion in the witness's testimony as we read it in the record, but this is the substance of it.

In some jurisdictions it has been held that an interrogatory such as the one in question imposes a continuing duty upon the party answering to disclose additional information when discovered, and some rules of procedure so specify. Burke v. Central R. R., 42 NJ Super 387, 126 A2d 903 (App Div 1956); Abbatemarco v. Colton, 31 NJ Super 181, 106 A2d 12 (App Div 1954). In other instances an analysis of the basic essence of the inquiry involved resulted in the conclusion that it was inherently continuing. Smith v. Acadia Overseas Freighters, 120 F Supp 192 (ED Pa 1953); King v. Cardin, 229 Ark 929, 319 SW2d 214 (1959). A statement to that effect in the interrogatory itself or a court order may also impose a continuing obligation to answer. It has been so held in various decisions of the federal district courts, to be found in the Federal Rules Decisions. Coyne v. Monongahela Connecting R. R., 24 FRD 357, (WD Pa 1959); Novick v. Pennsylvania R. R., 18 FRD 296 (WD Pa 1955); McNally v. Yellow Cab Co., 16 FRD 460 (ED Pa 1954); Wolf v. Dickinson, 16 FRD 250 (ED Pa 1953); Fur-

manek v. Southern Trading Co., 15 FRD 405 (ED Pa 1954); Kling v. Southern Bell Tel. & Tel. Co., 9 FRD 604 (SD Fla 1949); Chenault v. Nebraska Farm Prod., 9 FRD 529 (D Neb 1949); R. C. A. Mfg. Co. v. Decca Records, 1 FRD 433 (SDNY 1940); Heng Hsin Co. v. Stern, Morgenthau & Co., 20 Fed Rules Serv 33.42, Case 2 (SDNY 1954).

It is not necessary for us to decide whether a continuing duty was present in the instant case. The practice is relatively new in our trial courts and we prefer to let the question abide a case in which it may be more precisely involved. It is sufficient here to hold that the interrogatory was directed to the litigant and counsel and that it should have been answered fully and in good faith to the extent of the actual knowledge and information available *both to counsel and litigant.* It is clear that at the time defendant answered the interrogatory, it had readily available to it from the same source from which it obtained the names "Mr. and Mrs. Coleman," their full names and their address.

■ The only question remaining is what sanction, if any, should have been imposed on defendant? Supreme Ct Rule 19–12, Ill Rev Stats, c 110, § 101.19–12, 1959, provides various sanctions for failure to comply with rules as to discovery. They are basically pretrial in nature and do not specifically indicate that the exclusion of a witness is either an appropriate or inappropriate sanction. The sanctions specified are nonsuit, dismissal of a complaint, striking of all or part of the pleadings and the rendering of judgment on the rest, debarring the party from filing other pleadings and from maintenance of the particular claim, counterclaim, third party complaint or defense involved, and the staying of further proceedings pending compliance. Also, provision is made for contempt proceedings. However, this court has treated the rule as applicable to the exclusion of a witness whose name was

201

wrongfully withheld, although not applicable to the facts in that case. Granger v. Turley, 20 Ill App2d 488, 156 NE2d 610. Cf., Perez v. Baltimore & O. R. Co., 24 Ill App2d 204, 164 NE2d 209. In Granger v. Turley, supra, it was held that the trial court's failure to exclude a witness was not an abuse of its discretion as to the sanction to be imposed. The testimony complained of was merely cumulative and therefore the court held that the error, if any, was not reversible. In Perez v. Baltimore & O. R. Co., supra, while the rule was not referred to specifically, the question was whether the court should have excluded the testimony of a witness who was not named in the answer to a very general interrogatory with respect to doctors and nurses who had examined the plaintiff. This court held that the defendant had reasonably interpreted the interrogatory as relating to those doctors who had rendered reports to it. In the instant case the situation is quite different. The name and address of Coleman was clearly called for and his testimony was on a vital issue and affected the preponderance of the evidence.

In other jurisdictions courts have held appropriate the exclusion of such witnesses from testifying. Newsum v. Pennsylvania R. R., 97 F Supp 500 (SDNY 1953); Evtush v. Hudson Bus Transp. Co., 7 NJ 167, 81 A2d 6 (1951); Kronmiller v. Caruso, 57 NJ Super 331, 154 A2d 739 (App Div 1959); Central & South Truck Lines v. Westfall GMC Truck, Inc., 317 SW2d 841 (Mo Ct App 1958). Only for such reasons as failure to make timely objection or that a continuance has been granted in lieu of exclusion or that the testimony complained of has not been harmful, have courts held proper the testimony of such witnesses. Sather v. Lindahl, 43 Wash 463, 261 P2d 682 (1953); Atlantic No. Airlines v. Schwimmer, 12 NJ 293, 96 A2d 652 (1953). Such extenuating factors are not present here. The court should have excluded the witness or imposed as an alternative a sanction which would have effec-

tively protected plaintiff against harm to his case due to lack of prior knowledge of this witness.

■■■■ Plaintiff charges that it was error for the court to give instructions with respect to contributory negligence. On the basis of defendant's evidence, such instructions were proper. The instruction with respect to sudden danger was also proper in a case of this character. The weather report should have been received in evidence. The jury should have been instructed with respect to the ordinance of the City of Chicago relating to emergency vehicles, but it should not have been called a statute. Statute is the term applied to laws enacted by the legislature. We will not pass upon the other errors charged, since their validity is contingent upon the evidence to be presented on the retrial.

The judgment is reversed and the cause is remanded with directions to the trial court to grant plaintiff's motion for a new trial, and for such other and further proceedings as are not inconsistent with the views herein expressed.

Judgment reversed and cause remanded with directions.

McCORMICK, P. J. and DEMPSEY, J., concur.