Grace Freeman and Roger Freeman, Plaintiffs-Appellants and Cross-Appellees, v. Chicago Transit Authority, a Municipal Corporation, Defendant-Appellee and Cross-Appellant.

Gen. No. 49,106.

First District, Second Division.

June 30, 1964.

Herzl E. Levine, of Chicago (Herzl E. Levine, Herbert Veldenz and Vera Cuthbert, of counsel), for appellants.

William J. Lynch, William S. Allen, Erwin J. Wright and Jerome F. Dixon, all of Chicago, for appellee.

MR. JUSTICE BRYANT delivered the opinion of the court.

This is an appeal by plaintiffs, Grace and Roger Freeman, from a jury verdict in their favor of $2,500 each entered in the Circuit Court of Cook County on May 25, 1962; and from an order denying the plaintiffs a new trial entered on November 9, 1962. Defendant, Chicago Transit Authority, also appeals from an order entered on November 9, 1962, denying its motion for judgment notwithstanding the verdict and setting aside the special finding of the jury in its favor as against the manifest weight of the evidence.

Plaintiffs contend: 1. that the conduct of defendant's counsel deprived them of a fair trial; 2. that the jury was confused as was evidenced by their returning a special finding and a general verdict inconsistent with one another, and, therefore, a new trial should have been granted; 3. the verdicts were grossly inadequate.

Defendant on cross-appeal maintains: 1. the court was without power to set aside the special finding in defendant's favor since no motion to set aside the finding was made in the post-trial motion pursuant to section 68.1(2) of the Civil Practice Act (Ill Rev Stats c 110, § 68.1(2)); 2. where a special finding is inconsistent with a general verdict section 65 of the Civil Practice Act (Ill Rev Stats c 110, § 65) demands that the special finding control and that judgment be entered thereon.

This is a personal injury case arising out of a bus-car rear-end collision at a complicated intersection in the City of Chicago on the evening of November 12, 1959, at about 10:00 p. m. Plaintiffs, Roger and Grace Freeman, were proceeding in a northwest direction on Broadway in the inside lane in their 1951 Ford. Roger was driving. The streets were wet following a snowfall but there was no snow or slush at the intersection where the accident occurred. Defendant's

bus was following plaintiffs' car at a distance of approximately forty feet at from 15 to 20 miles per hour.

The accident occurred in the vicinity of the intersection of Pensacola and Broadway with Sheridan. Looking northwest on Broadway, Pensacola is a one-way street to the east perpendicular to Broadway and ending there. Sheridan is a north-south street cutting across Broadway and intersecting the east curb of Broadway about 90 feet from the north curb of Pensacola. The building line on the east side of Broadway between Pensacola and Sheridan measures 58 feet. There is a stoplight on the southeast corner of Pensacola and Broadway and another on the west side of Broadway approximately 98 feet northwest of the curb intersection with Sheridan Road. These two traffic signals work in identical patterns. There were other lights in the center of Sheridan at a point equal to an extended west building line of Pensacola; in the center of Sheridan north of the intersection of Broadway and Pensacola; and four lights at the intersection of Broadway and Montrose approximately 248 feet northwest of the Sheridan intersection measured on the west side of Broadway. The distance along the east side of Broadway from Montrose southeast to the intersection with Sheridan was between 75 and 100 feet. For purposes of this case we are only interested in the two lights on the southeast corner of Pensacola and Broadway and on the west side of Broadway, which lights direct Broadway traffic across the Broadway-Sheridan intersection. Broadway is a four-lane road approximately 38 feet from curb to curb, Sheridan is a four-lane road approximately 40 feet from curb to curb.

The testimony of the parties and all witnesses establishes that both Freeman and defendant's bus passed through a green light at the southeast corner of Pensacola and Broadway. After passing this light

130

Freeman testified that he noticed the light on the west side of Broadway beyond the Sheridan-Broadway intersection was changing from green to amber. He put his foot on the brakes and began to slow down. At this time his car was struck in the rear by the CTA bus. It is disputed whether the collision occurred prior to the entrance of Freeman's car into the Sheridan intersection.

Grace Freeman testified that she noticed the light on the left was turning to caution as the car entered the intersection of Broadway, Sheridan and Pensacola. She heard no horn or squeal of brakes.

Arthur Menda was driving parallel with plaintiffs on Broadway in the outside lane. He testified that he began to stop because the light on the west side of the street was red. Plaintiffs' car was also slowing for a stop when it was hit in the rear by the bus. Menda testified that he passed the intersection possibly three times a day and always watched for both lights.

Raymond Jenkins, operator of defendant's bus, testified that plaintiffs' car stopped suddenly and the brake lights were on. He applied his brakes, but skidded to the left and hit the car. He didn't look at the light on the west side of Broadway, but knew that it worked simultaneously with the one on the southeast corner of Pensacola and Broadway. Jenkins believed that the amber light at this intersection was long to allow traffic which had passed the green light at the southeast corner of Pensacola and Broadway to safely cross the Sheridan intersection. Jenkins was observing the light at Broadway and Montrose when he was a half bus length beyond Pensacola. When the light at Montrose is red and yellow, the light at Pensacola and Broadway and the light on the west side of Broadway was amber and green.

Robert Osgoodby, a passenger on the bus, testified that Freeman's car came to a stop in the center of the

131

intersection; stopped in the middle of northbound traffic. The bus tried to avoid the accident but could not. Osgoodby did not notice the status of the traffic lights. He placed the bus in the right hand or outside lane.

Pauline Gesner, a passenger on the bus, testified that the Freemans' car was standing still before the driver began to apply his brakes, the bus skidded to the left and there was contact between the bus and the car. She placed the accident in the intersection.

George Leahy, a police officer, who arrived at the scene following the accident, testified that "traffic passing a green light at Pensacola would have a right to proceed up until the stop-and-go light and proceed across, if he has the green light at Pensacola. The next stop light that governs him would be at Montrose." On recross-examination he stated further: "whether things were normal would depend upon whether or not you are approaching Pensacola and the light changes in front of you, it is possible it could turn red by Sheridan Road. If the lights are green at Pensacola you are allowed to proceed through. You can proceed until you get to Montrose if the lights are green." On re-redirect-examination he stated: "As one going northwest on Broadway and crossing Pensacola with a green light he sees a red light on the reflector, he must stop for Sheridan Road. If the light is red he's got to stop." On re-recross-examination he stated:

> "When the light on the southeast corner of Pensacola is green, the light on the west side or left hand side of the street is green also. They operate the same. As I said before, it is possible that after a man goes through this light that could change to red and he must stop at the intersection. There is a hesitation light that changes in that he can proceed until he gets to Montrose, but it would depend

132

upon the amount of speed at which he was traveling. If the light is red he must stop at the intersection of Sheridan. There is a hesitation between the change of lights because of the space between Pensacola and Sheridan . . . ."

■ ■ At the close of all the evidence plaintiffs moved for a directed verdict. They preserved the motion in the post-trial hearing and on appeal they especially urge that a verdict should have been directed in their favor. Defendant also moved for a directed verdict at the close of the evidence. On a motion to direct a verdict the court may not consider any conflicts in the evidence or its weight or preponderance or the credibility of witnesses, but may consider only that evidence which is most favorable to the party against whom such a motion is directed, together with all reasonable inferences that may be drawn therefrom. Battershell v. Bowman Dairy Co., 37 Ill App2d 193, 197, 198, 185 NE2d 340 (1962). Even where both parties move for a directed verdict the law is settled that only a question of law is presented and the court may not weigh the evidence. Wolf v. Chicago Sign Printing Co., 233 Ill 501, 503–506, 84 NE2d 614 (1908); 3A Nichols § 3509 (1961).

In the case of Ceeder v. Kowach, 17 Ill App2d 202, 149 NE2d 766 (1958), a rear-end collision case, defendant was found negligent as a matter of law since he should have foreseen that plaintiff would probably have to stop for a red light; that traffic on adjoining lanes would prevent turning out of the way of plaintiff's car; that he would have to apply his brakes; that his car would probably skid on the wet pavement if the brakes were applied too suddenly; and that if he were going too fast or was not far enough behind he would collide with plaintiff's car. The court said at 204:

". . . The fact that his car skidded into plaintiff's car, even though the pavement was wet, leaves room for no other inference, we think, except that under the circumstances defendant 'was driving too fast or following . . . too closely.' "

 Whether the facts are susceptible to but one interpretation of course depends upon the facts of each case. Here the facts upon which defendant's negligence must rest are in enough dispute so that the court did not err in refusing to direct a verdict. Defendant's witnesses testified that Roger Freeman made a sudden stop. Plaintiff's witnesses testified that the stop was slow. The adequacy of the stop signal was in question. Although Jenkins saw the brake lights, he said that the car stopped so suddenly there was no gap between the appearance of the brake light and the stop. Defendant's witnesses stated that Freeman's car stopped in the intersection. Plaintiffs' witnesses stated that Freeman stopped before the intersection. The color of the light on the west side of Broadway was in dispute. The testimony concerning the simultaneous workings of the light, known and relied upon by Jenkins, would seem to justify his surprise at the unexpected stop in front of him. On the other hand, the caution demonstrated by Roger Freeman in stopping at the appearance of an amber light would also be justified. We believe that the above facts are not so clearly susceptible to one interpretation, as they were in Ceeder v. Kowach (supra), that a verdict must necessarily have been directed as a matter of law.

The following special interrogatory was submitted to the jury by the defendant:

"Was the defendant's bus driver, Raymond Jenkins at the time and place in question, guilty

134

of negligence that proximately contributed to cause the occurrence in question?"

The jury answered "no" to the above interrogatory and then proceeded to bring in a general verdict for the plaintiffs. Section 65 of the Civil Practice Act (Ill Rev Stats c 110, § 65) provides inter alia:

"When the special finding of fact is inconsistent with the general verdict, the former controls the latter and the court may render judgment accordingly."

The special finding in this case was clearly inconsistent with the general verdict. Plaintiffs enumerated five specific charges of negligence in their complaint. Four of them charged the driver with negligent driving and were encompassed in the special finding. The fifth charge of "insufficient and defective brakes" was not supported by any evidence in the record.

 It is well settled that a question of error in a special finding must be scrupulously preserved to be reviewed upon appeal. Plaintiffs' post-trial motion was divided into two parts. Part I was a motion to direct defendant to file an additur or grant a new trial. Part II was a motion for a new trial or in the alternative for judgment notwithstanding the verdict. In both parts it was alleged that the verdict was contrary to law; the verdict of the jury is contrary to the manifest weight of the evidence; the verdict of the jury is contrary to the law and the evidence. The only sections relating specifically to the special interrogatories were that the court erred in permitting counsel for defendant to submit the special interrogatory to the jury because the evidence in the case showed the conduct of the bus driver to be such that he was guilty as a matter of law of negligence; and, that "the general verdict of the jury and the answer to the

135

special interrogatory shows that the jury was confused." Plaintiffs did not charge that the special interrogatory was against the manifest weight of the evidence nor did they ask to have the finding set aside. Nevertheless, at the disposition of the post-trial hearing the court set the special interrogatory aside because it believed that the jury's finding, finding that the bus operator was not guilty of any negligence, is against the manifest weight of the evidence.

The court clearly may set aside a special interrogatory inconsistent with the veredict, where the special interrogatory is against the manifest weight of the evidence. Young v. Illinois Cent. R. Co., 319 Ill App 311, 322, 49 NE2d 268 (1943); Paul v. Garman, 310 Ill App 447, 457, 34 NE2d 884 (1941); Biggerstaff v. New York, C. & St. L. R. Co., 13 Ill App2d 85, 89, 90, 141 NE2d 72 (1957); 3A Nichols §§ 3763, 3763.1 (1961). Where a finding is substantially conclusive of the fact upon which the issue of liability depended and the defendant has failed to object to the answer to the interrogatory in the motion for a new trial, the reviewing court must consider the special findings to have been fully sustained by the evidence. Forslund v. Chicago Transit Authority, 9 Ill App2d 290, 294, 295, 132 NE2d 801 (1956); Biggerstaff v. New York, C. & St. L. R. Co. (supra). This is also true where no motion has been made to set aside the special finding or where the answers have not been objected to as being against the manifest weight. 3A Nichols § 3763. Under the above authorities the plaintiffs would not have properly preserved the question for review by an appellate court had the court not on its own motion ruled on the question.

The question before us is simply whether the court had the power to set aside the special interrogatory absent motion by the plaintiffs presented in the post-trial motion under section 68.1(2) of the Civil

136

Practice Act. We think it clearly did. Our Supreme Court in County Board of School Trustees of Macon County v. Batchelder, 7 Ill2d 178, 183, 130 NE2d 175 (1955) reviewed the purpose of a post-trial motion and stated:

> " '. . . The purpose to be attained by a motion for a new trial, so far as it relates to errors which are thought to have occurred prior to the rendition of the verdict, is to call upon the trial court to review and reconsider its actions and rulings during the trial, to the end that any error which may have intervened may be corrected by the allowance of a new trial by the trial judge and the necessity avoided of accomplishing that purpose by resort to a court of review by appeal or writ of error. The purpose of a motion for new trial being, therefore, to obviate the necessity of resorting to an appellate tribunal, the soundness of the rule that a party should set forth in the motion for new trial all grounds therefor which he expects to urge in the court of review becomes manifest.' "

See, also, Illinois Central R. Co. v. Johnson, 191 Ill 594, 597, 61 NE 334 (1901); 3A Nichols § 3837. It would seem, therefore, that where the court seizes upon the opportunity itself to do justice between the parties, the error clearly is before it for purposes of review and the need for the rule would be nonexistent. This is especially true where the court feels that a finding is against the manifest weight of the evidence. Not only does the court have the power, but the duty to vacate a verdict against the manifest weight of the evidence. Donelson v. East St. Louis & S. R. Co., 235 Ill 625, 628, 629, 85 NE 914 (1908); Sibley Warehouse & Storage Co. v. Durand & Kasper Co., 102 Ill App 406, 411 (1902); Hunt v. Vermillion County

Children's Home, 381 Ill 29, 34, 44 NE2d 609 (1942); 3A Nichols § 3887 (1961).

 The right of the court to set aside answers to special interrogatories is subject to the same limitations as their right to set aside general verdicts on a question of fact. 3A Nichols § 3763.1 (1961). During the course of the trial, for a period of thirty days after judgment and during the post-trial period the court retains general jurisdiction over the parties and the subject matter and has inherent power to do justice between the parties so long as it acts fairly. Thus the court has the inherent power to submit special interrogatories on its own motion (Variety Mfg. Co. v. Mills Novelty Co., 145 Ill App 387, 390 (1908); 3A Nichols § 3736 (1961)); to direct verdicts on its own motion (Strong v. Kadlec, 163 Ill App 298, 299, 300 (1911); 3A Nichols §§ 3448, 3510 (1961)); vacate a default judgment on its own motion (Krieger v. Krieger, 221 Ill 479, 484, 77 NE 909 (1906); 4A Nichols § 4625 (1960)). There is no reason why a trial court should not have power to vacate a special interrogatory on its own motion. In Krieger v. Krieger (supra at 484), the court stated:

> ". . . During the term at which a judgment or decree is entered the record remains in the breast of the court, and the court may, at any time during the term, amend it or set it aside on its own motion or for good cause shown, as justice and the right of the case may seem to require. (Stahl v. Webster, 11 Ill 511; Smith v. Vanderberg, 46 id. 34; Edwards v. Irons, 73 id. 583; Shannahan v. Stevens, 139 id. 428.) The court retains jurisdiction of the parties and the subject matter of the litigation until the end of the term, and the judgment or decree does not become final or pass beyond its control until that time."

Although thirty days has been substituted for term time the above rule should surely remain. To hold otherwise would severely curtail the discretion of the lower court and would prevent the meting out of justice between the parties.

Appellee cites Gunderson v. First Nat. Bank of Chicago, 296 Ill App 111, 118, 119, 16 NE2d 306 (1938) where the court said:

> "Whenever a party files a written motion for a new trial he will be held to have waived all causes therefor not set forth in his written motion (Erikson v. Ward, 266 Ill 259), and in passing upon such motion the trial court is precluded from considering any except the grounds specified therein."

The case of Erikson v. Ward (supra) nowhere supports the above quotation but merely reiterates the familiar rule (at 266) that "where a party files a written motion for a new trial he will be held to have waived all causes therefor not set forth in his written motion." This principal in no way effects the inherent power of the court to do justice between the parties but merely prevents the assertion of error in an appellate court where it has not previously caught the attention of the trial court. We believe that any implication in the statement from the Gunderson case beyond this is dicta and has no force of law.

▉▉ The court set aside the special interrogatory because it believed the answer to be against the manifest weight of the evidence. This was not inconsistent with its earlier refusal to direct a verdict for plaintiffs. It would be improper to direct a verdict where there is a conflict in the evidence, in such instance the court may not weigh the evidence. It is well established, however, that where the question is one of manifest weight the court may weigh the evi-

dence and set aside the verdict. Where the question is whether the jury returned a verdict in accordance with the preponderance of the evidence, it is peculiarly within the discretion of the court. Lukich v. Angeli, 31 Ill App2d 20, 27, 175 NE2d 796 (1961); Gavin v. Keter, 278 Ill App 308, 315 (1934); Hulke v. International Mfg. Co., 14 Ill App2d 5, 46, 47, 142 NE2d 717 (1957); Bollin v. Galesburg Horse & Mule Co., 276 Ill App 256, 262, 263 (1934); 3A Nichols § 3887 (1961). Here, the record shows inconsistency in the testimony of the bus driver, Osgoodby and Gesner as to the location of the accident. The testimony of the police officer was confusing and easily misunderstood. On the other hand the testimony of the plaintiffs and Menda was clear and consistent. The court had the opportunity to observe the presentation of evidence and its determination that the answer to the special interrogatory was against the manifest weight of the evidence will not be upset. Although finding the special finding against the manifest weight of the evidence, the court did not grant plaintiffs a new trial. A trial court is allowed greater latitude in granting a new trial than in denying one. Bergman v. Gilbert, 6 Ill App2d 206, 126 NE2d 736 (1955); Thomas v. Chicago Transit Authority, 16 Ill App2d 470, 476, 148 NE2d 833 (1958). The court's action is difficult to understand since the inconsistency in the verdicts demonstrates a general confusion on the part of the jury. Stefan v. Elgin, J. & E. Ry. Co., 2 Ill App2d 300, 309, 120 NE2d 52 (1954); 3A Nichols § 3775.1 (1961). We believe that the jury's inconsistent verdicts presented an unawareness of the issues before them to such an extent that justice demands that a new trial be granted.

There are several problems which arose during the trial of the case which are likely to recur unless we dispose of them now. Plaintiffs have strongly urged

that the jury's verdict was inadequate. Although a higher verdict could easily have been foreseen in a case of this nature, and the jury might have returned a larger verdict had they not been confused, it is apparent that the verdicts were both above the out-of-pocket medical expenses of the plaintiffs and within the area of discretion in the jury. We reiterate that we are granting a new trial in this case not because of any inadequacy in the damages but solely because of the prejudicial confusion apparent in the jury's inconsistent verdicts.

██ ██ During the course of the trial a dispute arose as to whether an instruction on contributory negligence should be given regarding the conduct of Grace Freeman. The instruction as to contributory negligence as to Roger Freeman was warranted from evidence in the case. A passenger of an automobile must use reasonable and prudent efforts to avoid danger (Piper v. Lamb, 27 Ill App2d 99, 110–112 (1960)) but an instruction is improper where there are no facts or testimony presented from which a finding of contributory negligence might be found. On this record the instruction should not have been given in regards to Grace Freeman.

██ Matters were injected into the hearings by defendant's counsel which had no relevance to the proceeding and were clearly introduced solely for the purpose of prejudicing plaintiffs' case. There will be no need to introduce any questions concerning the type of clothing worn by Roger Freeman or any matter concerning the loss of a driver's license.

██ Plaintiffs complain that the court erred in allowing defendant's counsel to question Roger Freeman regarding a prior conviction of larceny by bailee and erred in preventing plaintiff from testifying for the purpose of explaining this occurrence. In Matzenbaugh v. People ex rel. Galloway, 194 Ill 108, 113, 62 NE 546

141

(1902) the court held that only those crimes which rendered a person infamous at common law or under our statutes could be introduced to impeach a witness' credibility. See also People ex rel. Keenan v. McGuane, 13 Ill2d 520–535, 150 NE2d 168 (1958). Section 587 of the Criminal Code (Ill Rev Stats c 38, § 587 (1959)) enumerates larceny as one of the infamous crimes. Section 394 of the Criminal Code (Ill Rev Stats c 38, § 394 (1959)) provides:

> "394. Larceny by bailee
> "If any bailee of any bank bill, note, money or other property, shall convert the same to his own use, with intent to steal the same, or secretes the same with intent so to do, he shall be deemed guilty of larceny."

There isn't any reason why a distinction should be drawn excluding larceny by bailee from the category of infamous crimes. Intent to steal is an element of the crime and a conviction would appear to have no more or no less of an influence on credibility than does common-law larceny.

■ Whether a witness who has been impeached by the prior conviction of an infamous crime may introduce evidence in extenuation or mitigation thereof is a question which the courts of Illinois have rarely passed upon. In Garman v. Smith, 263 Ill App 297, 299, 300 (1931), where a witness testified to his conviction of forgery and on redirect was asked questions concerning the nature and gravity of the crime, the court stated:

> "It was held in Schwarzschild & S. Co. v. Pfaelzer, 133 Ill App 346, that where the evidence of conviction is made by oral testimony, it is not error to interrogate the witness concerning the character and nature of the offense. Under the ruling

142

made in that decision no error was committed;
. . ."

Wherever evidence of mitigation or explanation is allowed, its admissibility is within the discretion of the court and it has wide latitude. United States v. Boyer, 150 F2d 595, 596 (1945), 166 ALR 211, 222. Standards by which an appellate court might review the discretion of the court are almost nonexistent. In fairness, offers of proof establishing the content of such testimony would seem necessary. In Illinois oral explanation has been allowed before. The court would seem to be controlled in its decision by the particular facts before it and by principles of relevancy and fairness. There would be no apparent objection to admitting explanation in this case.

▉▉▉ Plaintiffs contend the court improperly allowed Oscar Ludman, a CTA engineer, to testify regarding a plat of the intersection at which the collision occurred, on the ground defendant had neglected to include his name in the answers to an interrogatory asking the identity and location of all witnesses with knowledge of relevant facts "relating to the occurrence." We do not believe the witness was an occurrence witness within the rule of Battershell v. Bowman Dairy Co. (supra). He was properly allowed to testify.

This is a complicated personal injury case with a difficult liability question. It is important that the trial be carried on in such a manner that the jury be not confused. We are directing that a new trial be granted because the jury did not understand the issues in the case as was demonstrated by the inconsistency of the verdicts and the possible prejudice resulting to the plaintiffs since the court found the special finding to be against the manifest weight. The judgment of the Circuit Court is reversed and the cause

143

remanded for a new trial and proceedings not inconsistent with the views expressed herein.

Judgment reversed and cause remanded with directions.

FRIEND, J., concurs.

BURKE, P. J., dissenting in part:

I agree with the majority opinion that the case presented a question of fact to be determined by the jury. In the cases cited by plaintiffs the courts hold that the negligence or lack of negligence of the driver who stopped, or the negligence or lack of negligence of the driver who ran into him from the rear, whether the driver who stopped gave a signal in time for the driver from the rear to stop and all other questions relating to due care on the part of the two drivers are jury questions. See Stegmann v. Zachariah, 46 Ill App2d 7, 196 NE2d 703, for a recent case involving a collision with a stopped vehicle.

I agree with the contention of the defendant that the court was without power to set aside the special finding of the jury and that the trial judge should have granted defendant's motion for judgment notwithstanding the verdict. The majority opinion recognizes that the plaintiffs in their post-trial motion do not make the point that the special finding was contrary to the manifest weight of the evidence or move to have the special finding set aside. The provisions of sec 68.1(2) of the Civil Practice Act require that the post-trial motion must contain the points relied upon, particularly specifying the grounds in support thereof and must state the relief desired. This paragraph concludes by stating that a party may not urge as error on the review of the ruling on his post-trial motion any point, ground or relief not particularly specified in the motion. If the trial judge thought that the post-

trial motion should contain the point now urged he could have suggested to the plaintiffs an amendment of their motion to embrace the point.

Assuming, arguendo, that the point was made in the post-trial motion the trial judge should not have usurped the function of the jury by holding that the finding is contrary to the manifest weight of the evidence. There was competent evidence to support the finding.

The majority opinion grants a new trial "solely" because of the prejudicial confusion that appeared in the jury's "inconsistent verdicts." The books contain numerous opinions of our Supreme and Appellate Courts deciding that the answers to special interrogatories control the general verdicts. In these cases the reviewing courts have not thought that the inconsistency between the special finding and the general verdict showed confusion in the thinking of the jurors which would justify the court in ignoring the answers to the special interrogatory. To so hold renders ineffective the provisions of sec 65 of the Civil Practice Act that when the special finding of fact is inconsistent with the general verdict the former controls the latter and the court may render judgment accordingly.

There was no issue before the trial judge as to whether the special finding was contrary to the manifest weight of the evidence. He could not sua sponte raise an issue for plaintiffs that they had not raised themselves and then rule on it in their favor. The judgment should be reversed and the cause remanded with directions to grant defendant's motion for judgment notwithstanding the verdict.