FRANK OLESKIEWICZ *vs.* BOSTON AND MAINE RAILROAD (and a companion case[1]).

Hampden.  September 20, 1951. — December 5, 1951.

Present: QUA, C.J., WILKINS, SPALDING, & WILLIAMS, JJ.

*Negligence,* Grade crossing; *Railroad:* grade crossing. *Proximate Cause.*

A collision between a railroad train and an automobile on a grade crossing guarded by flasher lights could not have been the proximate result of any failure in the operation of the lights where it appeared that the automobile stalled on the crossing and that had it not done so there would have been ample time for it to pass over the crossing safely.

Evidence did not warrant a finding of negligence on the part of the engineer of a railroad train in failing at night to observe sooner than he did an automobile stalled on a grade crossing for not more than thirty seconds before it was struck by the train and in failing to stop the train in time to avoid the collision.

TWO ACTIONS OF TORT. Writs in the District Court of Chicopee dated February 9, 1943.

The defendant alleged exceptions saved at a trial before *Leary,* J., upon removal of the actions to the Superior Court.

In this court the cases were submitted on briefs.

*D. B. Wallace & F. S. Pillsbury,* for the defendant.
*R. P. Walsh,* for the plaintiffs.

WILKINS, J.  These actions of tort arise out of a collision about midnight on March 26, 1942, between a gasoline

---

[1] The companion case is by Mary Oleskiewicz, now Mary O. Dabakis, against the same defendant.

engine train of the defendant and an automobile at a public crossing on Plainfield Street, Springfield. The female plaintiff (hereinafter called the plaintiff) was a passenger in the automobile, which was owned and operated by one Johnson. She sues for personal injuries, and her father seeks consequential damages. There are two counts in each declaration, count 1 alleging negligence at common law, and count 2 alleging failure to give the signals prescribed by G. L. (Ter. Ed.) c. 160, § 138, as amended; § 232 (see now St. 1949, c. 427, § 10). The jury returned a verdict for each plaintiff on count 1, and for the defendant on the second counts. The cases were tried with an action against the railroad by Johnson in which the declaration contained counts for negligence and for failure to give the statutory signals, the jury returning a verdict for the defendant on all counts.

At the crossing there are three sets of tracks running northerly and southerly. Plainfield Street, upon which the automobile was travelling westerly, runs easterly and westerly. The train had left the Springfield station and was going northerly to Northampton upon the most easterly set of tracks. The crossing itself had a macadam surface and measured fifty feet from north to south and twenty-eight feet from east to west between the two outside rails. There was a flasher signal on each side of the crossing. Each signal had four lights which, in normal operation, came on and operated simultaneously, two lights flashing forward and two, known as "back-flashers," being visible from the rear on the opposite side of the tracks. The lights ordinarily were fed by alternating current by energized track instruments, but in the event of power interruption were to be fed by direct current. A northbound train would start the flasher lights operating when it entered the circuit at a point 2,120 feet south of the Plainfield Street crossing. The flasher light on the easterly side of the crossing was thirteen and one half feet east of the easterly rail. By actual measurement from a point thirteen feet east of the easterly rail of the northbound track in the middle of Plainfield Street, the

view south was unobstructed for a mile. From twenty and forty-two feet back — because of a fence and a building — the unobstructed view south was less, being one hundred thirty-two feet and one hundred forty-two feet respectively. The whistling post for the Plainfield Street crossing was 1,523 feet south of the southerly line of Plainfield Street. The foregoing are stated as facts in the bill of exceptions. The relative positions of the flasher lights and the tracks, the physical characteristics and surroundings of the crossing, and the field of vision are shown on a plan and photographs in evidence.

The plaintiff testified that she was riding on the front seat with Johnson; that no one else was in the automobile; that they had driven along Center Street[1] and made a right turn into Plainfield Street; that she looked but did not see any flasher lights in operation; that she was familiar with the crossing; that she had lived in that neighborhood for years and knew that the flasher lights operated when a train was approaching; that the automobile stopped a few feet from the tracks; that she looked in both directions on the tracks and saw nothing; that the automobile went forward and stalled on the tracks "between a quarter and a half minute"; that Johnson pushed or tried to push her out of the automobile; that she did not remember anything more until she regained consciousness in the hospital; that she never saw the train; that the automobile was a sedan, and the window on her side was open all the way; that she listened, but did not hear the train or any bell or whistle; and that the time when she looked and listened was when the automobile stopped before it started up and became stalled on the tracks.

Johnson testified that his speed was ten to fifteen miles an hour at seventy-five to one hundred feet from the crossing; that he was familiar with the crossing and the flasher lights; that "there were no lights that he relied on too much"; that he stopped the automobile three to four feet from the

---

[1] The bill of exceptions states that according to a plan in evidence it is 227 feet from the middle of Center Street to the easternmost rail.

most easterly rail; that he was sitting five to six feet from
that rail; that he looked to the right about three hundred
to four hundred feet, to the left about six hundred feet,
which was as far as he could see, and did not see anything;
that he looked to see if the flasher lights were on and they
were not; that the window on his side was fully open, and
he listened for a signal, but heard no bell or whistle; that he
put the automobile in first speed and went about three or
four feet forward where the automobile stalled with the
front wheels between the easternmost rails; that he tried to
start his automobile three or four times "which took about
a half minute or so"; that he heard the rattle of the train
but did not actually see it until it was about three hundred
or four hundred feet away; that he told the plaintiff to
jump, and tried to open her door and his door at the same
time; that he was thrown out when the automobile was hit;
and that the automobile came to rest on its side one hundred
feet north of the flasher light on the east side of the tracks.

According to evidence introduced on behalf of the plain-
tiffs it was a clear night; there was no traffic or parked
automobiles on Plainfield Street; and the train made con-
siderable noise. It could have been found, and seems to
have been undisputed, that the train consisted of one unit,
a passenger coach with a gasoline motor on the rear and the
engineer in a small cab at the front. There also was evi-
dence, which the jury did not have to accept, to the effect
that the statutory signals were given; that the flasher lights
were working; and that the automobile without stopping
was driven onto the tracks and was struck immediately.
There was testimony, introduced by both the plaintiffs and
the defendant, that the speed of the coach was thirty-five to
forty miles an hour. The engineer testified that at this
speed he could stop in approximately six hundred feet; that
he observed the white light through the peep hole in the
side of the flasher lights, the signal to the engine crew that
the flasher lights were working; that the headlight was on
full; that when the coach was about seventy-five feet from
the crossing the automobile came onto the tracks and

stopped with the front wheels between the tracks; that he put the brake on emergency and shut off the power; that in the ensuing collision the air pipes were broken, leaving the coach without brakes; and that the coach came to a stop five hundred feet north of the crossing.

The defendant's motions for directed verdicts were denied, and the defendant excepted. In view of proper instructions given the jury, their verdicts establish that the plaintiffs cannot recover for any failure to give the statutory signals. They were correctly instructed that the defendant should prevail on all the statutory counts of all the plaintiffs if the statutory signals were given or if there was a violation of G. L. (Ter. Ed.) c. 90, § 15, as amended by St. 1933, c. 26, § 1. *Kenney* v. *Boston & Maine Railroad,* 301 Mass. 271, 277. *Anderson* v. *Boston & Maine Railroad,* 302 Mass. 101. The jury were also properly instructed that if the only negligence was a failure to give the statutory signals, and § 15 was violated, there likewise could not be recovery by the plaintiffs on their common law counts. *Mannino* v. *Boston & Maine Railroad,* 300 Mass. 71, 74–75.

Since there were verdicts for the plaintiffs in the cases at bar on the common law counts, the question is whether there was other evidence of the defendant's negligence. The judge instructed the jury that the speed of the train was not such evidence. This was right, and no contrary contention has been made. The judge, however, left it to the jury to find whether there was a negligent failure of the flasher lights which was a cause of the accident. We are of opinion that this could not rightly have been done. On the testimony of the plaintiff and of Johnson, both of whom were entirely familiar with the crossing, he stopped his automobile a few feet from the nearest rail. At this point they were about ten feet beyond the flasher light on the easterly side of the tracks. It was then that the plaintiff looked for the only time and saw nothing. Johnson, who testified that there were no lights upon which he relied too much, looked to his left, and with a vision of six hundred feet saw nothing. On the testimony of both the plaintiff and Johnson, he then

drove his automobile forward three or four feet where it stalled with the front wheels just beyond the nearest rail. According to the plaintiff, the automobile remained in this position "between a quarter and a half minute." According to Johnson, it was about "a half minute or so." Whichever length of time be thought more favorable to the plaintiffs, and whether the speed of the train be taken at thirty-five or forty miles an hour, it is apparent that there was ample time to cross the tracks, and that any failure of the flasher lights, even if negligent, could not have been a cause of the accident, which was due to some failure of the automobile or in its operation. *Davis* v. *New York, New Haven & Hartford Railroad,* 272 Mass. 217, 221–222. See *Gannett* v. *Boston & Maine Railroad,* 238 Mass. 125, 131–132.

The plaintiffs contend that the defendant's engineer was negligent in failing to observe the automobile during the not more than thirty seconds while it was stalled with its front wheels between the tracks and in failing to stop the train in season to avoid a collision. While the night was clear, there is no evidence of the extent of visibility from the engineer's cab. When Johnson stopped short of the crossing, neither he, who could see six hundred feet, nor the plaintiff saw the engine or its headlight. The plaintiff never saw the train at any time. Johnson finally heard its rattle and then saw it at a distance of three or four hundred feet. In our opinion, it has not been established that the engineer, who, on the evidence, could stop in approximately six hundred feet, when at that distance or more from the crossing, should have observed the automobile (as to any lights on which there was no evidence), much less that he should have observed that the automobile was actually on the tracks, or if it was, that it was unable to move. *Sypher* v. *Director General of Railroads,* 243 Mass. 568, 571. *MacLaren* v. *New York, New Haven & Hartford Railroad,* 252 Mass. 233, 235.

We do not find it necessary to discuss the question of contributory negligence.

*Exceptions sustained.*
*Judgments for the defendant.*