Alex Stefan, Appellee and Cross-Appellant, v. Elgin, Joliet and Eastern Railway Company, Appellant, and William E. Ferguson and Austin Miller, Cross-Appellees.

**Gen. No. 46,192.**

Opinion filed May 5, 1954. Rehearing denied June 15, 1954. Released for publication June 15, 1954.

KNAPP, CUSHING, HERSHBERGER & STEVENSON, of Chicago, for appellant and cross-appellees; HARLAN L. HACKBERT, of Chicago, of counsel.

SILVIO E. PIACENTI, of Chicago Heights, MARION J. HANNIGAN, and EDWARD WOLFE, both of Chicago, for appellee and cross-appellant; EDWARD WOLFE, of Chicago, of counsel.

MR. JUSTICE KILEY delivered the opinion of the court.

This is a personal injury action arising from a collision between plaintiff's automobile, which had stalled on railroad tracks, and the defendant Railway's locomotive. The jury found the engineer and fireman not guilty, the Railway guilty and assessed damages at $100,000. Judgment was entered accordingly. The Railway has appealed from the judgment against it, and plaintiff has cross-appealed from the judgment in favor of the engineer and fireman.

The accident happened in Dyer, Indiana in the intersection of the Railway's east-west tracks and Hart Street at about 6:45 a. m. on September 16, 1949. Plaintiff was driving north on Hart Street, Dyer's main thoroughfare. The tracks were straight west for about 900 feet and then curved to the northwest. The train, consisting of a diesel engine and 41 tank cars, was going east on the southernmost tracks. Standard crossbuck railroad signs were maintained at the crossing. The sign south of the crossing was on the east side of Hart Street. Flasher signals were mounted on each sign and were set in operation by an electric current circuit about 1,360 feet west of Hart Street.

Plaintiff sued the three defendants, and in count I charged negligence and in count II wilful and wanton misconduct. At the close of plaintiff's case he dismissed count II. At the close of all the evidence plaintiff dismissed several charges of negligence, including that of negligence under the Indiana doctrine of last clear chance. It is conceded that the only charges of negligence affecting the Railway, apart from its liability for acts of the engineer and fireman, that went to the jury are: (a) that the Railway neglected to maintain operating flasher signals at the crossing on the day of the accident, and (b) that it permitted the crossing to become "worn, uneven and dangerous" with sufficient notice of the condition to enable it to repair the crossing.

303

The Railway contends as a matter of law that its alleged negligence was not the proximate cause of plaintiff's injuries. The question on the contention is whether there is any evidence tending to prove that the alleged non-operating flasher signal or uneven, rough crossing proximately caused the accident.

On this question we shall apply the familiar rule, and take the most favorable view for plaintiff: The weather on the morning of September 16, 1949 was clear and dry. Plaintiff was driving north on Hart Street and when a couple of blocks south of the tracks could see about 1,000 feet to the west on the tracks. He looked and observed no train approaching. As he came to the crossing he slowed down to about "8 or 9" miles an hour, looked west and east, saw no train approaching, observed the warning flicker lights were not operating and he drove into the intersection. Plaintiff knew of these flasher signals and that in operation they signified the approach of a train.

The planks between the southernmost tracks were loose and the rails were a few inches above the planks. This condition had prevailed for about four years. Plaintiff knew it was a "very bumpy crossing." As plaintiff's automobile met these planks, there was "shock," the "engine died" and the automobile came to rest with the rear wheels on the north track of the southernmost tracks.

Plaintiff looked west and saw defendant's eastbound train about 900 feet away coming on the tracks where his automobile had stalled. He looked east and saw no train coming on the westbound tracks. He tried to start his automobile; the ignition failed. He looked west again, saw the train about 700 feet away. He waved his hand at it and an answering wave came from the engine cab and the train appeared to begin slowing down. He looked east, saw no train, tried the starter again; it failed. He looked west a third time, the train was

about 300 feet away, appeared to be slowing down and plaintiff tried the starter without success a third time. He looked west again, saw the train about 30 feet away, started to get out of the automobile and remembered no more until he regained consciousness at the hospital.

The train was being operated by the fireman, who had changed places with the engineer, at the right side of the engine cab. The engineer was at the left window. Also in the cab were three brakemen. There was nothing to obstruct the view to the east, after the tracks straightened out from the northwest curve about 900 feet west of Hart Street. After leaving the curve the speed of the train was increased as it approached the Hart Street crossing. When the collision occurred the train was going about 20–25 miles per hour. The engineer first saw plaintiff's automobile on the north rail of the eastbound tracks when the train was about 150 feet from the crossing. He "hollered" to the fireman who applied the emergency brakes when about 70 feet from the crossing. The left front part of the diesel struck the left rear of the automobile. After the accident the train came to a stop with the diesel and seven cars east of the crossing. The diesel was 70 feet long, each car was 40 feet long. The train, at about 15 miles per hour, could be stopped in an emergency in about 300 feet.

Defendant contends that on the foregoing facts the non-operation of the flasher signals was not the proximate cause of the accident because when plaintiff drove into the crossing he had already seen that no train was coming, and consequently, had relied on his own observation, not on the signals.

██ The jury found specially that the plaintiff did not drive his automobile onto the crossing when the train was so close as to "constitute an imminent danger." When he drove onto the crossing, no train was in his view. When his automobile stalled, he saw the

305

train about 900 feet away. There was ample time for him to drive across the tracks had not the automobile stalled. The failure of the flasher lights was not the proximate cause of the accident. *Wabash R. Co. v. McNown*, 53 Ind. App. 116; 99 N. E. 126; *Oleskiewicz v. Boston & Maine Railroad*, 328 Mass. 180, 102 N.E.2d 417. This conclusion is not inconsistent with the holdings in *Pearson v. Baltimore & Ohio R. Co.*, 200 F.2d 569; *Pennsylvania R. Co. v. Boyd*, 98 Ind. App. 439, 185 N. E. 160; *Chicago & E. I. Ry. Co. v. Latta*, 91 Ind. App. 102, 166 N. E. 297, that a plaintiff has the right to presume that if a train were approaching, the signals would be functioning. Even under the presumption, there was ample time to cross.

█ We shall assume, but not decide, that the condition of the crossing caused the automobile engine to die. Was the alleged negligence of the Railway in maintaining the crossing as it was the proximate cause of the accident? No cases cited by the parties are of particular help on this question. Here again plaintiff, after his car stalled, saw the train approaching when it was 900 feet away. We think reasonable men must agree that what transpired from the stalling of the car to the collision was not a natural, unbroken sequence of events which the uneven crossing set in motion.

We conclude, therefore, as a matter of law there was no evidence tending to prove that the failure of the flasher signals or the condition of the crossing was the proximate cause of the accident. *Jones v. Cary,* 219 Ind. 268, 37 N.E.2d 944. We need consider no other point.

We turn now to the cross-appeal by plaintiff from the judgment on the verdict for the engineer and fireman.

█ The record contains an order reciting that plaintiff's motion for new trial came on to be heard, was argued, deliberated by the court and the motion

306

denied. The order imports verity and we see no merit in the contention that the cross-appeal should not be considered because the motion for new trial was waived by plaintiff's failure to argue the motion.

██ Defendants to sustain the verdict, contend that plaintiff was guilty of contributory negligence as a matter of law. We have already recited, in our opinion on the appeal, the evidence most favorable to plaintiff. Plaintiff is entitled to the most favorable inferences that can be drawn from that evidence: When he looked at the train the second time it was 700 feet away. He waved and an answering wave came back from the engine cab and the train appeared "to begin slowing down." The inference is that either the engineer or fireman saw plaintiff's plight and were slowing down to avoid a collision. When plaintiff next looked the train was about 300 feet away and appeared "to be slowing down." The most favorable inference is that his impression that the train was beginning to slow down was confirmed by the appearance that it was slowing down. We think reasonable men could differ on the question of plaintiff's prudence in making the several attempts to start the automobile and that the question was for the jury. Cases cited by the defendants where there was no indication that the train was slowing down (*Horsley v. Chesapeake & O. Ry. Co.*, 191 Va. 628, 61 S.E.2d 868); where the night was dark and the automobile was where it would not be expected to be (*O'Neill v. Middlesex & B. Street Ry. Co.*, 244 Mass. 510, 138 N. E. 841; where plaintiff looked out of the "tail" of his eye and did not see the approaching train (*Gulf, M. & O. R. Co. v. Freund,* 183 F.2d 1005 (8th Cir.)); and others, cited by defendants, having differentiating facts, are not helpful.

The contention of plaintiff on the cross-appeal is that the verdict of the jury finding the defendant engineer and fireman not guilty was against the manifest

weight of the evidence in view of the answers of the jury to the special interrogatories.

The jury specially found that plaintiff was in the exercise of due care. The inference is therefor that the not guilty verdict was based upon a finding that the engineer and fireman were not negligent (a) in failing to give warning of the train's approach; (b) in negligently operating the train at an excessive speed; (c) in negligently violating the statutory requirement with respect to ringing the diesel bell or sounding the horn; (d) in failing to keep a proper lookout for persons traveling on the right of way over the crossing.

The stories of the parties relating to plaintiff's entrance onto the track are contrary and cannot be reconciled. Plaintiff said he drove onto the intersection after looking west and seeing no train, and that when his automobile stopped he saw the train about 900 feet away. The fireman-operator of the diesel said plaintiff entered the crossing when the train was about 150 feet away from the crossing. The inference from the engineer's testimony corroborates this statement.

The jury could not reasonably find plaintiff in the exercise of due care if it accepted the trainmen's story of the position of the train when plaintiff drove on the crossing, because to do so it would have to disbelieve his story that when he was 15 feet from the crossing he looked west, could see 900 feet, and saw no train coming. It is apparent the jury accepted plaintiff's story as to the position of the train.

But if it accepted plaintiff's story, how could it absolve the trainmen of negligence in failing to keep a proper lookout? Plaintiff's automobile would have been stalled on the tracks at a distance of 900 feet from the train; the trainmen would have had an unobstructed view of the automobile; they kept accelerating the speed through 15 miles an hour though they could see the plaintiff's predicament meanwhile; they could stop

308

at that speed in 300 feet; and they did not apply the brakes until too late to avoid the collision.

█ An inference that the trainmen were not negligent in keeping a proper lookout under these circumstances would be clearly against the weight of the evidence.

██ The findings of a jury, to be upheld, must be supported by the evidence or represent the jury's failure to be convinced by the evidence. In the instant case, the affirmative finding that the plaintiff did not drive his automobile onto the crossing when the approaching train was so close to the crossing as to constitute an imminent danger is utterly inconsistent with the trainmen's version of the accident. That finding is supported only by plaintiff's version of the accident, which the jury apparently accepted for the purpose. The finding that the defendant engineer and fireman were not guilty is supported only by their version of the issue and is inconsistent with plaintiff's version. Furthermore, the special finding negatives the possibility that the jury accepted neither version, since the issue was decided and presumably on evidence in the record.

█ In this case, the inconsistency, in view of the party line-up and the corresponding separate issues, indicates that the jury was misled into making findings on the basis of persons instead of evidence. Therefore the established rule that a special finding controls an inconsistent general verdict (*Crosse v. Supreme Lodge, Knights and Ladies of Honor,* 254 Ill. 80; *William Laurie Co. v. McCullough,* 174 Ind. 477, 90 N. E. 1014; See § 65, Civil Practice Act [Ch. 110, Par. 189, Ill. Rev. Stat. (1953)] [Jones Ill. Stats. Ann. 104.065]) is not applicable. We think justice demands reversal for a new trial.

█ In aid of the new trial we shall comment upon several procedural questions. The trial court sus-

tained an objection to a question put to plaintiff whether he "had plenty of time to get out of your car" when he looked west a second time. We think the court ruled properly. In *Casey v. Kelly-Atkinson Const. Co.,* 240 Ill. 416, relied on by defendant, there were no facts upon which the jury could infer that there was enough time between the foreman's order to make fast a machine, which caused the injury, and the first motion of the machine. The court there saw no difference between the statement "plenty of time" in an affidavit and a statement of the interval of time. In *Bobalek v. Atlass,* 315 Ill. App. 514, a conclusion as to time was justified on the ground of difficulty of explanation. In the instant case all the facts necessary for the jury to decide whether plaintiff should have gotten out of his car were in evidence. The question, objected to, called for plaintiff's opinion which added nothing proper to the facts.

 We think too that the court properly excluded "admissions of plaintiff's lawyer" to impeach plaintiff's testimony as to what he did after seeing the train for the first time after the automobile stalled. The attorney's "admission" was made to the representative of a company which carried the insurance covering damage to the car. The record shows that plaintiff, in the hospital, referred the representative to an attorney not to discuss plaintiff's injuries, but the car damage. The record does not show that the attorney was authorized to represent plaintiff in the personal injury action, and consequently his "admission" was not binding on plaintiff in this case. *Hathway v. Smith,* 187 Ill. App. 128.

Finally, we think that plaintiff's instruction #18 should be modified to clearly bring it within the statement in *Illinois Cent. R. Co. v. Siler,* 229 Ill. 390. The terms "every effort" and "some danger" are not fair

310

in this case. The words "every" and "some" are too broad and may be misleading.

For the reasons given the judgment is reversed as to all defendants and the cause is remanded for new trial on the issues under the doctrine of *respondeat superior*.

*Reversed and remanded.*

LEWE, J., concurs.
FEINBERG, P. J., took no part.