Mary Borries, Plaintiff-Appellant, v. Z. Frank, Incorporated, and Ronald Schultz, Defendants-Appellees.

Gen. No. 50,408.

First District, First Division.

July 11, 1966.

Rehearing denied August 1, 1966.

KLUCZYNSKI, P. J., dissenting.

Delbert T. Been, of Chicago (Ely Hefter, of counsel), for appellant.

Menk & Johnson, of Chicago (John Cadwalader Menk, of counsel), for appellees.

MR. JUSTICE MURPHY delivered the opinion of the court.

This is a·personal injury case, in which the jury returned a $30,000 general verdict for plaintiff. The jury also returned a special interrogatory, which found that plaintiff was "guilty of negligence which proximately contributed to cause the occurrence in question." The trial court denied plaintiff's motion to set aside the answer to the special interrogatory and entered judgment for defendants. Plaintiff appeals.

On September 27, 1960, at approximately 4:30 to 5:00 p. m., plaintiff, a pedestrian, was struck by the rear end of a car, which backed into her. The scene of the

occurrence was mid-block on Bryn Mawr Avenue, a busy thoroughfare in Chicago. She sustained a hip fracture and was hospitalized. She was treated by various doctors, was in a walker for 6½ months and on crutches until August 1961. At the time of her injury, plaintiff was employed as a waitress. She was unable to resume work until July 1, 1962, when she commenced working as a desk clerk in a motel.

Plaintiff's determinative contention is that the trial court erred in failing to set aside the special finding, the answer to the special interrogatory, and enter judgment for plaintiff on the general verdict, as no evidence was offered to refute plaintiff's evidence, or, in the alternative, to grant plaintiff a new trial, as the special finding was against the manifest weight of the evidence.

Defendants contend that the purpose of the special interrogatory is to test the general verdict and "to complain that the two 'verdicts' were inconsistent is simply to say that the special interrogatory served its function as provided by the statutory provision. The point is well illustrated by the court's decision in the case of Wise v. Wise, 22 Ill App2d 54–58, 159 NE2d 500–502. The court there said, in answer to the same argument made here by the plaintiff:

> "The statute expressly provides that the answer to the special interrogatory controls the general verdict. Ill Rev St, Ch 110, Sec 65. This statute would be completely nullified if a court disregarded its mandate and ordered a new trial on the ground the inconsistency showed 'confusion'."

"In short, it is pointless to be arguing about the inconsistency between the jury's special finding and the general verdict, since the possibility of such a result is clearly contemplated by the statutory provision which authorizes the use of such special interrogatories. See 35 ILP Trial, Sec 331–339."

The occurrence witnesses were plaintiff, an eyewitness named Mildred Koontz, and defendant Schultz. Plaintiff's testimony shows that she lived in the Bryn Mawr Hotel on the southwest corner of the intersection of Bryn Mawr and Kenmore. Plaintiff came out of the hotel on the Bryn Mawr side, through a cleaning shop, intending to visit a beauty shop, which was located on the north side of Bryn Mawr at about the middle of the half-block which runs from Kenmore on the east to the alley on the west. The front entrance of the hotel is on Kenmore, a short distance from the intersection of Kenmore and Bryn Mawr, where there was a marked crosswalk protected by traffic lights. The cleaning shop was about in the center of the block on the first floor level of the Bryn Mawr Hotel, east of the scene of the occurrence.

On cross-examination, plaintiff testified, ". . . I actually saw the car just as it hit me. I saw this car that was parked there; as it hit me I saw it and fell right to the street. . . . Instead of coming out of the front entrance I came out through the cleaning shop. I was not late for my appointment. I came out and walked west, to a point further down from the beauty parlor, further down to the alley. The beauty parlor was about three or four buildings up further east. I could see it by looking across the street. I wasn't directly across from the beauty shop because I had gone down to the alley to cross. I remember this car that was parked there at the curb. There was no car parked back of it. There were a number of cars parked along there, and I noted particularly this car as I passed it. I looked at it to see if someone was in it before I stepped—went by it, so if he —see if somebody was in it, because I was going to cross. . . . I looked into because I was going to cross at the alley . . . and if somebody had been in it, I wouldn't have done it. I thought someone might back up so I didn't step in. I walked down about seven or eight feet in back of the car. I was standing close to the alley; I would

131

say a couple of feet, two or three feet. I was in line with the door of the TV shop when I stepped off. I was looking north; that would be straight in the direction in which I was going. As I walked behind this car, I looked again at this car, as I walked in back of it. I did not see anybody in it. I did not see anybody around it. I continued walking and walked about five feet out off the curb. . . . I was standing in back of the driver's seat in the car. . . . As I walked out I looked again, and I did not see anybody. When I reached this five feet mark I stood there for several minutes—a couple of minutes, then just—well, just standing there waiting to cross the street. I looked both ways, up and down watching the traffic to wait for the red light to come on up at Kenmore so I could cross. I was watching the light up at Kenmore to see if I would be able to cross. I was particularly interested in the light at Kenmore. I did not see a man come around this car, open the door, or put anything in the driver's side or get into the car on the driver's side. I did not hear any motor start. I was about seven or eight feet back of the car. I did not see the car begin to move towards me. I did not notice Mrs. Koontz across the street."

Mildred Koontz testified that she was employed as a beautician at 1044 West Bryn Mawr Avenue, just west of Kenmore on the north side of the street. She knew plaintiff, who had an appointment with her "around 4:00 or 4:30 in the afternoon." She had finished with her last customer and was waiting for plaintiff to come in. "I had occasion to look out and I was watching for Mary Borries. I did not see her at that time. While I was standing there I observed a man coming out of the liquor store across the street and get into his car. He got into his car, and then I see him get out of his car and walk toward the back of his car, and then I notice there was a person lying back of the car on the street. At that

132

time I did not recognize this person. When I saw him pick her up I realized that it was my customer, Mary Borries, so I went over to assist her. . . . The first time I saw Mary Borries on that day she was lying on the street . . . in front of the door of the radio store generally. I saw the driver of the car where the car was parked prior to the time that it was moved, and the car was parked in front of the liquor store . . . . I observed the man (defendant Schultz) walk in front of his car and walked around to the driver's side, got into the car on the driver's side. He had a carton of something, I don't know what it was; it was just a carton. The door of the beauty shop was open. I did not hear any horn at any time prior to the time that he backed his car up."

On cross-examination, she testified, " . . . The beauty shop is east of the alley, in about the middle of the block between the alley and Kenmore; that is, the middle of the half block. There is a traffic signal at Bryn Mawr, and there are marked pedestrian crosswalks there."

Defendant Schultz, called by plaintiff as if under cross-examination, testified that he had parked his car two parking spaces from the alley, and there was a car between his car and the alley, with a normal space of three or four feet. He went to the supermarket, came back to his car, and his recollection was that he got in on the driver's side. He turned on the ignition, looked back, then went forward, put the car in reverse and looked back again. At that time he saw an arm going up at the right rear of the car, toward the curb. He immediately stopped his car and went around to the back, where he found the plaintiff lying by the curb in the street. At no time before the occurrence did he see plaintiff. "I didn't pass her on the sidewalk. I didn't see her standing behind the car when I got in. The first time I saw the plaintiff was when an arm went up to the right rear of the car."

Testimony was introduced by plaintiff as to her injuries and her physical condition prior to the occurrence

and after the occurrence, and it is not material to any of the issues raised on appeal.

At the close of all of the evidence offered on behalf of plaintiff, the defendants moved to adopt the testimony of defendant Schultz, called under section 60 as an adverse witness, and offered some photographs of the scene of the occurrence, which were received in evidence.

The special interrogatory given on behalf of defendants was the following: "Interrogatory—Was the plaintiff guilty of negligence which proximately contributed to cause the occurrence in question?" Answer—"Yes," and signed by the foreman and eleven other jurors.

The instructions to the jury included IPI 21.02:

"The plaintiff has the burden of proving each of the following propositions:

"First, that the plaintiff before and at the time of the occurrence was using ordinary care for her own safety;

"Second, that the defendants acted, or failed to act in one of the ways claimed by the plaintiff as stated to you in these instructions and that in so acting, or failing to act, the defendants were negligent;

"Third, that the plaintiff was injured in her person;

"Fourth, that the negligence of the defendants were a proximate cause of the injury or damage to the plaintiff.

"If you find from your consideration of all the evidence that each if these propositions has been proved then your verdict should be for the plaintiff, but, if, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved, then your verdict should be for the defendants."

Plaintiff contends that the special finding and the general verdict are inconsistent with one another and indicate that the jury was confused, and that there is no evidence to support the special finding. Plaintiff's authorities include:

Young v. Illinois Cent. R. Co., 319 Ill App 311, 49 NE2d 268 (1943), in which it is said (p 322):

> "The affirmative finding of a special verdict of negligence is not binding upon the trial court upon defendant's motion to set it aside, if it is not supported by any evidence, or if, as here, it is contrary to the manifest weight of the evidence."

Todd v. Borowski, 25 Ill App2d 367, 166 NE2d 296 (1960), (at p 375):

> "The affirmative or negative answer of the jury to a proper special interrogatory of either party as to a material question of ultimate fact, such as the alleged wilful and wanton acts of either party, is binding on the trial court (upon the other party's motion to set it aside) unless such is not supported by any competent evidence, or unless it is against the manifest weight of the evidence. . . .

And, on page 381, it is said that the special finding cannot be said to be against the manifest weight of the evidence if "an opposite conclusion is not clearly apparent, and the finding is not clearly or palpably against the manifest weight of the evidence. . . ."

Defendants contend that the trial court's action in denying plaintiff's motion to set aside the jury finding on the special interrogatory was justified by the evidence. Defendants argue that plaintiff failed to keep a proper lookout, and the law does not permit plaintiff to say that she failed to see that which she had to see if she had looked.

Defendants point out that there are serious differences between the testimony of plaintiff and Mildred Koontz, in that Miss Koontz saw the defendant and all of his actions and failed to see the plaintiff until after the occurrence, although plaintiff stood in the street for several minutes almost opposite the beauty shop. Miss Koontz saw defendant come out of the store with a carton and walk around the front of his car and open the door on the driver's side and get in. Defendants argue, "How could Miss Koontz from across the street, see all this activity around defendant's car, and the plaintiff see none of it, although plaintiff is supposed to have been standing only about seven or eight feet from the car, looking to the east (toward the car) watching for a change in the traffic lights? The jury could well conclude, and we so urged in our closing argument, that plaintiff either kept no lookout at all or actually never did stand out in the street for several minutes, but simply quickly stepped off the curb, in back of defendant's car, without looking, and so unexpectedly that defendant Schultz had no chance to see her."

Defendants further argue the jury was not compelled to accept plaintiff's testimony at face value in the absence of direct contradiction by the defendant. Cited in support of this point is Hadley v. White, 367 Ill 406, 11 NE2d 813 (1937), where it is said (p 412):

> "As this court has frequently pointed out, the testimony of a witness may contain, within itself, its own impeachment, and he may be contradicted by what he states as well as by adverse testimony, and there may be so many omissions, discrepancies and improbabilities in his testimony as to justify a court or jury in disregarding it in its entirety."

We agree with the foregoing contentions of defendants, but we are not persuaded, under the circum-

136

stances of this case, that the court was correct in denying plaintiff's motion to set aside the answer of the jury to the special interrogatory, nor are we persuaded that the answer to the special interrogatory was against the manifest weight of the evidence, and that the general verdict for plaintiff should prevail.

Plaintiff's testimony is that defendant's car was parked and unattended immediately before she was struck, and that it was being driven in the reverse, without any warning to pedestrians, as she was attempting to cross the roadway at a point other than a marked crosswalk. Reasonable men might differ as to whether plaintiff was in the exercise of due care for her own safety under the circumstances portrayed here. Reasonable men might believe lack of due care is demonstrated by any attempt to cross a busy thoroughfare, at mid-block, even though the pedestrian maintains a conscious and continued effort to keep a proper lookout. Others might defend a pedestrian crossing a roadway in heavy traffic at any point other than a marked crosswalk, if the crossing is performed with due care, because of the provisions of the Uniform Act Regulating Traffic on Highways (Ill Rev Stats 1965, c 95½, §§ 170–172), which cover "Pedestrians' Rights and Duties."

These divergent views as to crossing a highway at other than a crosswalk show that the giving of the instant interrogatory was not improper in this case, and we cannot say that the jury finding on this issue was against the manifest weight of the evidence, even though defendants offered no evidence to refute plaintiff's testimony. However, the manifest inconsistency of the two findings of the jury on a basic and material issue, plaintiff's negligence, after the giving of the special interrogatory and IPI Instruction No. 21.02, indicates the jury was confused or not fully instructed on that issue. Therefore, the established rule that a special

137

finding controls an inconsistent verdict should not be applied here. Stefan v. Elgin, J. & E. Ry. Co., 2 Ill App2d 300, 309, 120 NE2d 52 (1954).

■ This case presented a difficult liability question. A $30,000 verdict for plaintiff is quite substantial and shows that the jury gave plaintiff's injuries much consideration, and for the jury to also find that plaintiff was "guilty of negligence which proximately contributed to cause the occurrence in question" shows conclusively that the jury was either confused or unable to grasp the inconsistency in its verdicts. A trial court is allowed greater latitude in granting a new trial than in denying one, and in the instant case, where the inconsistency in the verdicts clearly demonstrates an unawareness of the issues by the jury and of the conflicting nature of the verdicts being returned, we think that justice demands that a new trial be granted. Freeman v. Chicago Transit Authority, 50 Ill App2d 125, 140, 200 NE2d 128 (1964).

The judgment of the Circuit Court is reversed and the cause is remanded for a new trial and proceedings not inconsistent with the views expressed herein.

Reversed and remanded with directions.

BURMAN, J., concurs.

KLUCZYNSKI, P. J., dissenting.

Section 65 of the Civil Practice Act prescribes that the jury "must be required on request of any party to find specially upon any material question or questions of fact stated to them in writing." Ill Rev Stats, c 110, § 65 (1963). Defendants did request and the court did submit a special interrogatory on the basic and material question of whether plaintiff was guilty of contributory negligence. The trial court entered judgment in accordance with the answer to the special interrogatory, applying

138

the provision of section 65 that it controlled the general verdict.

My colleagues of the majority found that the special interrogatory was not improperly given. They also accepted defendants' contentions that there was proof substantiating the jury's answer to the interrogatory and they rejected plaintiff's contention that the answer was against the manifest weight of the evidence. Yet they rule that the trial court erred in not setting aside the answer to the special interrogatory because the awarding of substantial damages by its general verdict and its special finding against the plaintiff on the basic material issue of due care is so inconsistent as to show conclusively that the jury was not fully instructed and was confused and unable to grasp the inconsistency.

The effect of such ruling is to say that whenever 21.02 of the IPI or any similar instruction is given regarding the burden of proof or any ultimate fact, the jury cannot be required to find specially upon any of the propositions therein mentioned; that such situation regardless of the nature of the case would require a general verdict only.

I cannot agree. Section 65 specifically contemplates inconsistency between general verdicts and special interrogatories. In fact, the authorities hold that the inconsistency under that section must be absolute and wholly irreconcilable. In Moyers v. Chicago & E. I. R. Co., 43 Ill App2d 316, 193 NE2d 604 (1963), the trial court denied the request for a special interrogatory on the question of contributory negligence and the jury returned a general verdict awarding $65,000 in damages. The plaintiff's objection to the giving of the special interrogatory was that the issue was covered by other instructions and would be included in the jury's verdict. The court, on page 317, held:

This objection is without merit. No matter how completely and accurately the jury is instructed,

139

this is no ground for objection to a proper interrogatory, and, since the interrogatory must be on an ultimate issue of fact, it always is covered by the general verdict. The important point is, that the answer to the special interrogatory controls the general verdict and will nullify the verdict if inconsistent therewith.

Section 65 of the Practice Act provides that the jury may be required by the Court "and must be required on request of any party, to find specially upon any material question or questions of fact stated to them in writing".

It is uniformly held that this provision of the statute is mandatory and the court has no discretion to refuse the request if it is on a material ultimate fact. Jones v. Phillips, 349 Ill App 393, 110 NE2d 758; Todd v. Borowski, 25 Ill App2d 367, 166 NE2d 296; Millsap v. Central Wisconsin Motor Transp. Co., 41 Ill App2d 1, 189 NE2d 793.

These cited cases also clearly demonstrate that the negligence of a defendant and contributory negligence of a plaintiff are material ultimate facts. The tendered interrogatory and accompanying instructions should have been given. For this reason the judgment is reversed and the cause remanded for a new trial.

It was held in Hulke v. International Mfg. Co., 14 Ill App2d 5, 51, 142 NE2d 717, 741 (1957) that:

A special interrogatory is not proper unless it relates to one of the ultimate facts upon which the rights of the parties directly depend and unless the answer responsive thereto would be inconsistent with some general verdict which might be returned upon the issues in the case. Interrogatories which ask for a special finding as to evidentiary facts are never

proper, even though ultimate facts may be deduced therefrom by reason or argument.

See also, Brackett v. Osborne, 44 Ill App2d 441, 456, 195 NE2d 8 (1963).

And so the purpose of special interrogatories is to test the general verdict against the jury's conclusions as to the ultimate controlling facts, and must necessarily be accompanied by a general verdict. Haywood v. Swift & Co., 53 Ill App2d 179, 181, 202 NE2d 880 (1964).

In North Shore Sanitary Dist. v. Schulik, 12 Ill2d 309, 312, 146 NE2d 25, 26 (1957), after finding that the special interrogatory relating to the ultimate fact (depreciation of the property by condemnation) upon which the rights of the parties depended, the court said:

Section 65 of the Civil Practice Act . . . reads in part as follows: "When the special finding of fact is inconsistent with the general verdict, the former controls the latter and the court may render judgment accordingly". We have held under an early similar statutory provision that the failure to enter a judgment on the special finding rather than the general verdict was reversible error. (Crosse v. Knights of Honor, 254 Ill 80.) Here, the existence of depreciation is a prerequisite to an award of substantial damages. The special finding of the jury (that there was not any depreciation) precludes such an award, and the judgment should have been entered on the special finding unless it was manifestly against the weight of the evidence.

In the instant case, where the special finding was founded in proof and was not against the manifest weight of the evidence and the interrogatory was proper, if the trial court had failed to enter judgment on the special finding as against the general verdict, it might be held to constitute reversible error. But when the trial court

141

enters judgment according to the special finding, it is imperative to note for purposes of review that it is acting within the discretion given by the express language of section 65 which provides that "the court *may* render judgment accordingly." Hence, on review, in absence of a showing of an abuse by the trial court of this discretion, the trial court's judgment should not be overturned. There is no basis in the present case for finding that the trial court abused its discretion; therefore, I would affirm.