ROBERT G. STARBUCK, Plaintiff-Appellee, v. CHICAGO, ROCK ISLAND & PACIFIC RAILROAD COMPANY, Defendant-Appellant.

Third District   No. 75-322

Opinion filed April 15, 1977.

STOUDER, J., dissenting.

William Walker, of Coryn and Walker, of Rock Island, for appellant.

Jerome Mirza, of Bloomington, Reynolds M. Everett, of Galva, and Charles M. Blachinsky, of Kewanee (Jerome Mirza, of counsel), for appellee.

Mr. JUSTICE BARRY delivered the opinion of the court:

This appeal involves a civil action in the Circuit Court of Henry County wherein plaintiff, Robert G. Starbuck, sought recovery from the defendant railroad for personal injuries sustained in a grade crossing accident. A jury returned a general verdict in favor of plaintiff and against defendant in the sum of $50,000. The jury also answered two special interrogatories in which they found (1) that the defendant railroad was guilty of negligence that was the proximate cause of the accident, and (2) that the plaintiff was guilty of contributory negligence which was a proximate cause of the accident. The trial court entered judgment on the general verdict and subsequently denied defendant's post-trial motion which sought in the alternative for the trial court to set aside and vacate the judgment on the general verdict and for entry of a judgment for defendant based on the jury's answer to the special interrogatory finding plaintiff guilty of contributory negligence or for judgment notwithstanding the general verdict and in accordance with defendant's motion for a directed verdict. Defendant now appeals from that order denying defendant's post-trial motion.

Two issues raised by the defendant are determinative of this appeal. First defendant claims it was reversible error for the trial court to set aside the jury's answer to the special interrogatory concerning plaintiff's contributory negligence on the grounds that said answer was against the manifest weight of the evidence. Secondly, defendant contends that it was reversible error for the trial court to enter judgment on the general verdict when the answer of the jury to the special interrogatory indicated that plaintiff was found to be contributorily negligent and was inconsistent with the general verdict.

On May 8, 1969, the plaintiff, Robert Starbuck, was involved in an accident at an unlighted railroad grade crossing in rural Henry County, Illinois. The crossing in question was located on a county road known as the Cambridge Blacktop which road runs in a generally north-south direction. The railroad tracks run in an east-west direction. The train involved in the incident was traveling in a westerly direction and was occupying the crossing at the time of the accident with the accident occurring at a time when approximately the 55th car of a 5-engine 85-car train was occupying the crossing. The vehicle which plaintiff was driving, a motorcycle, approached the crossing from the north and was traveling in a southerly direction. The accident occurred at approximately 1:30 in the morning and it was dark and there was a hard-driving rain.

The plaintiff had no memory of the incident in question, his last memory being when he turned onto the Cambridge Blacktop several miles before the grade crossing. He was apparently suffering from retrograde amnesia. There were no eyewitnesses to the accident itself, but two members of the railroad crew did see plaintiff as he approached the crossing just prior to the accident. More specifically the two crew members of the train, William Starr and Gayle Hammond, testified that they saw "a light" and presumed it to be a car. However, they were never closer than one-quarter mile from "the light" and lost sight of it when it was approximately 200 feet from the railroad crossing. No actual occurrence witness testified. Evidence in the record indicated very poor visibility due to the darkness of the evening and the extremely heavy hard-driving rain. The two train crew members testified that when their caboose went across the crossing and they saw a headlight burning in the ditch by the crossing they still presumed that "the light" represented a car.

■■ ■ We will first consider whether the answer to the special interrogatory finding plaintiff guilty of contributory negligence is against the manifest weight of the evidence. The trial judge set aside the jury's answer to the special interrogatory because he found there was no believable evidence to support the finding of contributory negligence. It is well settled that the trial judge may set aside the answer to the special

interrogatory only where the special finding is contrary to the manifest weight of the evidence. (*Houston v. Leyden Motor Coach Co.* (1968), 102 Ill. App. 2d 348, 243 N.E.2d 293.) In order to determine whether the answer to the special interrogatory is against the manifest weight of the evidence the standard set forth in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504, and applied in *Kirby v. Swedberg* (1969), 117 Ill. App. 2d 217, 253 N.E.2d 699, should be considered. We agree with the trial court's finding that when all of the evidence is viewed in its aspect most favorable to the defendant, it overwhelmingly favors plaintiff on the issue of contributory negligence and that no finding of contributory negligence on the part of plaintiff could ever stand, and that therefore the answer to the special interrogatory was against the manifest weight of the evidence.

The record indicates that there were no eyewitnesses to the occurrence and that plaintiff's retrograde amnesia made him unable to testify as to the actual collision. Plaintiff did testify that he never drove his motorcycle over 40 m.p.h. in the best of weather. Two witnesses for plaintiff were permitted to testify that he was a person of careful habits. More particularly these witnesses characterized plaintiff as a "very careful driver" one who "drove actually below the speed limit when he drove" and who "always drove real slow." The clearly permissible inference that may be drawn from this uncontradicted evidence of plaintiff's careful driving habits is that he was in the exercise of ordinary care for his own safety on the night of the accident.

The defendant attempted to overcome the inference of plaintiff's exercise of due care by the testimony of its two crewmen. Each testified to viewing "a light" approaching the crossing from the vantage point of a moving train at 35 m.p.h. on a very dark night in a heavy downpour of rain and from a distance of a quarter mile from "the light." Although they were unable to even identify the light as a motorcycle, they presumed it to be a car and testified to its speed. From their very poor vantage point and under extremely poor visibility conditions they testified that "the light" was "coming quite fast."

The crewmen's estimates of plaintiff's excessive speed on this dark rainy night were clearly contradicted. They testified they first saw "the light approximately across from a farm house which was a little over 500 feet from the crossing or possibly a little before the farm house, or within 700 to 800 feet from the crossing" according to the brakeman Gayle Hammond. The conductor William Starr testified that the caboose was 45 railroad cars from the crossing when he first saw the light from the headlight of plaintiff's vehicle. According to Starr the collision or incident that injured plaintiff occurred when the 55th car of the 85-car train reached the crossing and when the caboose in which Starr and Hammond

were riding was 30 cars from the crossing. Testimony indicated each freight car on the train was approximately 50 feet long. Thus while plaintiff traveled from the point where the two crewmen first observed him the train traveling at a rate of 35 m.p.h. traveled approximately 750 feet. Viewing this evidence in its aspect most favorable to defendant, plaintiff was traveling about 35 m.p.h. between the time he was first observed and when he reached the crossing. Such evidence contradicts defendant's witnesses' testimony that plaintiff was approaching the crossing at a high rate of speed and supports the view that defendant's witnesses Starr and Hammond could not accurately estimate the speed of the approaching "light" from their poor vantage point in light of the adverse visibility conditions. The court was not bound to accept testimony that was so manifestly unreasonable under all the circumstances as to be judged improbable. *Beatrice Foods Co. v. Gallagher* (1964), 47 Ill. App. 2d 9, 197 N.E.2d 274.

■■ We acknowledge of course that the general verdict for plaintiff and the answer to the special interrogatory finding plaintiff contributorily negligent are inconsistent, and that the contributory negligence of plaintiff generally would bar his recovery and preclude the award of damages by the jury's general verdict. Section 65 of the Illinois Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 65) provides the controlling procedure for the trial court in the event of inconsistent verdicts. That section provides in part, "When the special finding of fact is inconsistent with the general verdict, the former controls the latter and the court may render judgment accordingly." (Ill. Rev. Stat. 1973, ch. 110, par. 65.) While the answer to the special interrogatory will normally control the general verdict and require the trial court to enter judgment consistent therewith, such answer has no binding effect upon the trial court when it has no substantial evidentiary support, or when, as in the instant case, the determination is contrary to the manifest weight of the evidence. *Borries v. Z. Frank, Inc.* (1967), 37 Ill. 2d 263, 226 N.E.2d 16; *Freeman v. Chicago Transit Authority* (1965), 33 Ill. 2d 103, 210 N.E.2d 191.

■■ Having agreed with the trial court's determination that the answer to the special interrogatory regarding plaintiff's contributory negligence was against the manifest weight of the evidence so as to preclude following the mandate of section 65 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 65), we must now determine whether the proper procedure for the trial court upon vacating the answer to the special interrogatory was to enter judgment on the general verdict. The cases of *Freeman v. Chicago Transit Authority* (1964), 50 Ill. App. 2d 125, 200 N.E.2d 128, and *Borries v. Z. Frank, Inc.* (1966), 73 Ill. App. 2d 128, 219 N.E.2d 737, initially stated that the inconsistent verdicts demonstrated a general confusion on the part of the jury so that justice demanded a new trial. The reasoning was affirmed in *Freeman v. Chicago Transit*

*Authority* (1965), 33 Ill. 2d 103, 210 N.E.2d 191. The decisions were construed by the Illinois Supreme Court in *Borries v. Z. Frank, Inc.* (1966), 37 Ill. 2d 263, 265, 226 N.E.2d 16, 18, wherein it was stated, "the inconsistency between the special and general verdicts made the latter a nullity, and, since the trial court had found that the former was against the manifest weight of the evidence, judgment *could not* thereafter be entered in accordance with either the special or general verdicts thus necessitating a new trial." (Emphasis added.) This reasoning of *Borries v. Z. Frank, Inc.* (1967), 37 Ill. 2d 263, 226 N.E.2d 16, was reiterated in *Kirby v. Swedberg* (1969), 117 Ill. App. 2d 217, 253 N.E.2d 699, where it was held under similar circumstances that the proper procedure was for a new trial to be ordered.

Since we are of the opinion that the trial court was correct in finding that the answer to the special interrogatory finding plaintiff guilty of contributory negligence was against the manifest weight of the evidence, we believe that *Borries v. Z. Frank, Inc.* (1967), 37 Ill. 2d 263, 226 N.E.2d 16, *Freeman v. Chicago Transit Authority* (1965), 33 Ill. 2d 103, 210 N.E.2d 191, and section 65 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 65) are controlling and provide that the only proper remedy for the trial court in these circumstances was to order a new trial. We further believe that the recent cases of *Zygaldo v. McCarthy* (1974), 17 Ill. App. 3d 454, 308 N.E.2d 167, and *Leonard V. Pacific Intermountain Express Co.* (1974), 37 Ill. App. 3d 995, 347 N.E.2d 359, apply a misconstruction of the law in holding that the trial court can set aside the answer to a special interrogatory because it is against the manifest weight of the evidence and then enter judgment on the general verdict. Their reasoning is based upon dicta contained in *Kirby v. Swedberg* (1969), 117 Ill. App. 2d 217, 253 N.E.2d 699, which directly contradicts the express reasoning of the supreme court in *Borries* that the inconsistency between the answer to the special interrogatory and the general verdict under section 65 of the Civil Practice Act, itself makes the general verdict a nullity and necessitates a new trial.

For the foregoing reasons the judgment of the Circuit Court of Henry County is reversed and the cause is remanded for a new trial.

Reversed and remanded for new trial.

ALLOY, P. J., concurs.

Mr. JUSTICE STOUDER, dissenting:

I respectfully dissent from the conclusion of the majority of the court that the answer to the special interrogatory finding plaintiff guilty of contributory negligence was not supported by sufficient evidence. The evidence relating to plaintiff's claim of freedom from contributory negligence was disputed, was a triable issue of fact, was an issue properly

resolvable by the jury and depending on how the jury viewed such evidence, was sufficient to support the jury's resolution of the evidence against the plaintiff and indeed, would have been sufficient to support a contrary result. I therefore find nothing improper in the jury's response to the special interrogatory and since it controls the dispute, I believe that judgment in favor of the defendant is the only appropriate result.

The opinion of the majority reveals considerable confusion on the basic rule relating to issues which ought to be tried by a jury and the effect of the jury's resolution of such issues. It seems to me the basic premise is and should be that if a factual dispute is properly resolvable by a jury, this means that the evidence should be sufficient to support the jury's determination whatever it decides. If a jury is entitled to reach only one conclusion, then there is no factual dispute and obviously nothing for a jury to resolve. If the evidence is insufficient to support the finding which the jury made, then why should the issue be resubmitted to a jury?

Although I believe the *Pedrick* rule (*Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 229 N.E.2d 504) is the proper way to evaluate the sufficiency of the evidence, regardless of what rule is applied, it is my conclusion that the evidence supports the jury's resolution of the issue presented by the special interrogatory against the plaintiff. The only evidence offered by the plaintiff to establish his due care was the testimony of two witnesses who stated that the plaintiff was a person of careful habits. I have no quarrel with the propriety of presenting evidence of careful habits to show plaintiff's due care whenever the plaintiff has retrograde amnesia because of the accident and no other eye witnesses to the accident exist. While evidence of careful habits may be sufficient to allow a jury to decide the issue of plaintiff's due care, such evidence, even if uncontroverted, can rarely, if ever, establish a plaintiff's due care as a matter of law. The previous opinion of this court in *Storm v. Brown*, 15 Ill. App. 3d 29, 303 N.E.2d 42, supports this view.

In *Storm* plaintiff brought an action for the allegedly wrongful death of plaintiff's decedent which had occurred as a result of a vehicular collision. On the question of the decedent's due care, his widow was allowed to testify as to his careful habits, but the jury returned a verdict in favor of defendants and judgment was entered thereon. Plaintiff maintained on appeal that because the only evidence of the decedent's due care was his widow's testimony as to the decedent's careful habits, the element of due care had been established as a matter of law. The court rejected this contention and stated:

> "While proof of a decedent's careful habits may be introduced, in the absence of the existence of eyewitnesses to the accident other than the defendant, * * * it does not follow that such evidence, even when wholly uncontroverted, establishes due care as a matter

of law. No witness need be believed by a jury, and in any event 'careful habit' evidence merely *tends* to prove a decident's due care. When properly admissible, it is sufficient in our judgment only to permit the plaintiff to take that element of the case to the jury, who, in the absence of other believable evidence to the contrary, *may* then infer that the decedent was indeed in the exercise of due care with respect to the particular matter at issue." (15 Ill. App. 3d 29, 32, 303 N.E.2d 42, 44.)

The inference of due care or freedom from contributory negligence which may be drawn from evidence of careful habits is to be considered in the context of the details of the incident. When the details of the incident are considered in this case, namely, that the plaintiff was driving in a heavy rain and drove his motorcycle off into a ditch, they certainly affect the strength or weakness of any inference of due care. In this connection it should be noted that there are no authorities cited in the majority opinion supporting the thesis of the majority that evidence of careful habits and the inference to be drawn therefrom *establishes* plaintiff's due care as a matter of law or conversely makes a contrary finding improper as a matter of law.

The conclusion that plaintiff's due care was not established as a matter of law is further buttressed by the fact that unlike what occurred in *Storm*, testimony was introduced in this case contradicting the evidence of plaintiff's careful habits. The majority dismiss the testimony of the train crew as having no bearing or probative value on the issue of plaintiff's due care. They do so not because of the nature of the evidence itself, but because of the conclusion that they draw from such evidence. By means of a mechanical approach, the majority reject as improbable the testimony by the train crew of plaintiff's excessive speed. I disagree with their analysis for several reasons. In the first place, estimates of distances are by their nature susceptible of substantial variation and to use such estimates or guesses in a mechanical way to establish speed does not render the result any more certain or reliable than the initial estimates. In the second place, an additional variable is the claim that some incident occurred or observation was made using as a reference the time of a particular car of the train crossing the highway. The evidence on this point is vague since there was no impact between the motorcycle and any car of the train. In the third place, a speed of 35 miles per hour in a driving rain by a person on a motorcycle might be considered "high speed" or at least unreasonable by a jury. All these factors suggest substantial disputes in the evidence regarding plaintiff's due care and consequently, I think the jury's response to the special interrogatory is supported by ample evidence and under the authorities requires a judgment in favor of the defendant.